GERTRUDE L. JENREE, *Appellee*, v. THE METROPOLITAN STREET RAILWAY COMPANY *et al.*, *Appellants*.
No. 17,440.

SYLLABUS BY THE COURT.

1. PERSONAL INJURIES — *Defective Sidewalk — Maintenance Assumed by Street Railway—Liability to Pedestrian.* A city ordinance granted to a street railway company the right to construct, maintain and operate its railway over a viaduct forming a part of a street in the city. One of the conditions was that the railway company should repair and maintain in good condition and safe, for public travel all parts of the viaduct. The ordinance was accepted, and the railway was constructed and operated. A sidewalk forming a part of the structure, but not the part used by the railway company, was suffered to become out of repair and unsafe for use, in consequence of which the plaintiff, while traveling on the side-

walk, was injured. *Held*, the plaintiff may recover directly from the railway company the damages resulting from the injury.

2. ———— *Ordinance that Railway Company Shall Respond to City—Joint Liability.* The ordinance further provides that the railway company shall respond to the city and save it harmless from damage resulting from acts and negligence of the railway company. *Held*, this provision of the ordinance merely secures to the city the right to be reimbursed in the event that its own liability, which under the law still exists, shall be enforced. It does not confine the railway company's liability to the city alone.

Appeal from Wyandotte district court. Opinion filed February 10, 1912. Affirmed.

*O. L. Miller, C. A. Miller,* and *Nathan Cree,* for· the appellants.

*James F. Getty,* for the appellee.

The opinion of the court was delivered by

BURCH, J.: An ordinance of the city granted to the railway company the right to construct, maintain and operate street railways upon the streets of the city and upon and over certain viaducts and bridges forming portions of such streets. Section 25 of the ordinance contained the following provision:

"Said railway company shall refloor, repair and maintain in good condition and safe for public travel all parts of the aforesaid bridges and viaducts, including the viaduct approaches."

The terms of the ordinance were accepted by the railway company, and a line of street railway was constructed upon and operated over what is known as the Seventh street viaduct over the tracks, yards and grounds of the Union Pacific and Chicago, Rock Island & Pacific railroad companies. A sidewalk forming part· of the viaduct was negligently suffered to become out of repair and dangerous for public use, in consequence of which the plaintiff, while traveling upon it,

was seriously injured.   She recovered damages against both the city and the railway company and both appeal.

The railway company denies liability under the section of the ordinance referred to, and reinforces its contention by appealing to another section numbered 13, which reads as follows:

"In constructing, repairing and operating such street railway, said company shall use every reasonable and proper precaution to avoid damages or injury to persons or property, and shall at all times respond to the City of Kansas City, and save it harmless from all and every damage, loss, cost or expense caused or occasioned by reason of any act or negligence, of said company in the construction, reconstruction, repairing or repaving of said streets, or the operation of said street railway, or by reason of any and every act done under the provisions of this ordinance."

The argument is that the ordinance is merely a private contract between the city and the railway company; that section 25 merely determines between the parties which one of them shall be to the expense of keeping the viaduct in repair and safe for public use; section 13 limits the liability of the railway company to respond in damages to actions by the city; and that the plaintiff, not being privy to the contract and being only incidentally and indirectly benefited by it, is not entitled to sue for a breach of it.

The sidewalk is six feet wide and is supported by cantilevers on the east side of the viaduct.   West of the sidewalk is the roadway for vehicles and the railway track is laid upon this portion of the structure.   The railway company made no use of the sidewalk and the regulation concerning it had no reference to the construction, maintenance or operation of the railway itself, so that the duty, default and liability of the railway company, if any existed, lay outside the scope and boundaries of its ordinary business.   The petition counted upon the negligence of the company in suffering the sidewalk to become out of repair and unsafe for

31—86 KAN.

use. The ordinance was pleaded as the source of the company's duty to keep the sidewalk in proper condition. If the duty existed it was created by that instrument.

The railway company refuses to view the ordinance as anything but a private contract. It is more than a contract, and there are cogent reasons for giving to section 25 the effect of a public statute. It is not necessary, however, to rest the decision upon this ground, and the obligation of the railway company may be treated simply as one which was contractually assumed. In granting to the railway company the right to occupy and use the streets for railway purposes the city was acting in its governmental capacity for the welfare of the general public. Its private proprietary affairs were not involved, except as they might be related in the most incidental way to the public ends to be attained. The benefit resulting from a secure sidewalk was one to be reaped by the public. The maintenance of such a way was a matter of public concern. The duty to keep the sidewalk in a condition which would prevent it from becoming a public nuisance and which would permit all pedestrians, including the plaintiff, to use it in safety was a public duty, and the manifest purpose of section 25 was to cast this duty which the city owed to the traveling public, including the plaintiff, upon the railway company as a condition to the street-railway grant. The city was not engaging a contractor or employing an agent or servant to perform for it and on its behalf the work of inspection, repair, reconstruction and the like, essential to the maintenance of a secure way. It was taking advantage of an opportunity to shift the whole burden of taking those steps upon another who should stand, in relation to the public safety and convenience, in the city's place and stead. The obligation being a public one, to be performed for the public benefit, the party assuming it was respon-

sible to the public. Therefore, the contract was one for the benefit of the plaintiff as a member of the public.

The principle involved was apprehended and stated with reasonable clearness by Lord Abinger in the case of *Winterbottom v. Wright,* 10 M. & W. 109, which is one of the familiar landmarks of the law on the subject of liability to third persons for the negligent breach of a contractual duty. The opinion contains the following observations:

"Where a party becomes responsible to the public, by undertaking a public duty, he is liable, though the injury may have arisen from the negligence of his servant or agent. So, in cases of public nuisances, whether the act was done by the party as a servant or in any other capacity, you are liable to an action at the suit of any person who suffers. Those, however, are cases where the real ground of the liability is the public duty, or the commission of the public nuisance. There is also a class of cases in which the law permits a contract to be turned into a tort; but unless there has been some public duty undertaken, or public nuisance committed, they are all cases in which an action might have been maintained upon the contract." (p. 114.)

Perhaps the leading American cases in which the principle has been stated and applied are *City of Brooklyn v. Brooklyn City R. R. Co.,* 47 N. Y. 475, and *McMahon v. Second Avenue Railroad Company,* 75 N. Y. 231. In the City of Brooklyn case a portion of the opinion reads as follows:

"A municipal corporation, by the conferring and acceptance of a charter with powers of opening and controlling streets and ways, has put upon it the correlative duty to the public of keeping those ways in repair, so that they may be safe for the passage of the public. When one contracts with that corporation to keep any portion of those streets in repair, in consideration of a license to use them to his benefit in an especial manner, he in effect contracts to perform that duty to the public in the place and stead of the municipality, and the way is given over to him for that purpose, and he takes it into his care and charge therefor, and his

failure to perform his contract is a failure to do that duty, and the damages which naturally and proximately result from nonperformance are all the damages which naturally and proximately fall upon the corporation from the duty not being performed.

"The different principles which govern the different classes of cases grow out of the differences in the contracts with which the classes of cases are respectively concerned. The one relates to private matters alone. The other relates to matters with which the public and third persons are also concerned. And, as we read the decision in *Robinson v. Chamberlain*, 34 N. Y. 389, that case goes on the same principle, or one near of kin. That was an action against the defendant, a contractor with the state to keep in repair a section of the canals, for an injury resulting to a boat of the plaintiff from a lock-gate being out of repair. It was held that, by the contract of the defendant with the state, he assumed the duties and was invested with the powers of a public officer, and that the portion of canals covered by the defendant's contract was a public highway; that he, by his contract, assumed the duty of keeping in repair a public thoroughfare, and was therefore liable in a civil action to any one of the public sustaining special damage from his neglect to keep it in repair. His contract was not with the injured party, but with the state. But it was a contract to perform a duty to the public, for a neglect of which the state, but for its sovereignty, would be liable to the party injured. And so by the force of his contract, he having thereby assumed public duties, he was held liable to one injured by a neglect to perform them." (p. 485.)

In the McMahon case the conclusion of the court is stated in the headnote to the opinion, as follows:

"Where one contracts with a municipality to perform in its stead the duty resting upon it of keeping its streets in repair and safe for the passage of the public, and where because of neglect to perform the duty a cause of action arises against the municipality, the action may be brought by the party injured directly against the contractor." (75 N. Y. 231.)

It is impossible to say that the plaintiff was a stranger to the contract. The subject of the under-

taking was a sidewalk, safe for use as such. The public interest in that subject can not be refined away, and unless mere fiction and form are to prevail over substance and fact, the contract was made for the benefit of every individual whose rights as one of the public might be specially affected. Because the city owed the plaintiff the duty to keep the sidewalk in repair and safe for travel, the plaintiff had a legal interest in the performance of the contract, and so became privy to it.

"To give a third party who may derive a benefit from the performance of the promise an action, there must be, first, an intent by the promisee to secure some benefit to the third party; and, second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally.

"It is true there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee [in this case the city] to him [the plaintiff] will so connect him with the transaction as to be a substitute for any privity with the promisor [the railway company] or the consideration of the promise, the obligation of the promisee furnishing an evidence of the intent of the latter to benefit him, and creating a privity by substitution with the promisor." (*Vrooman v. Turner*, 69 N. Y. 280, 283.)

The words of the contract, "safe for public travel," were equivalent to "safe for the traveling public," and in principle, the plaintiff, as a traveler on the sidewalk, stood toward the railway company in the same relation of privity that a mortgagee bears to a grantee of the mortgagor who assumes and agrees to pay the mortgage debt.

In the case of *Mott v. Water Co.*, 48 Kan. 12, 28 Pac. 989, in which it was held that the water company was

not liable to an individual for damages which it had agreed with the city to pay when occasioned by an insufficient supply; the city itself was under no obligation either to furnish water or to pay the contemplated damage. Here the duty rests upon the city to keep the street safe for use, and to pay all damages which result proximately from a breach of the duty. It may be observed, however, that the modern tendency it to hold that a contract made between a municipality and a public-service corporation inures directly to the benefit of the individual citizen in the very cases in which the city rests under no legal duty or liability respecting the subject of the contract. (*Ind. Dist. v. LeMars Light & Water Co.*, 131 Iowa, 14, 107 N. W. 944; *Pond v. New Rochelle Water Co.*, 183 N. Y. 330, 76 N. E. 211.)

Section 13, upon which the railway company relies, must be interpreted in the light of the true meaning and effect of section 25. It is not clear that the damages suffered by the plaintiff fall within the terms of section 13. There is room for the contention that the city is to be indemnified only for damages resulting from the prosecution of street work in a negligent or otherwise wrongful manner. Leaving this question undetermined, however, the section merely secures to the city the right of reimbursement in the event that its liability which, notwithstanding the railway company's contract, remained uncanceled, should be enforced.

In the brief for the city reasons are given for reversing the judgment against the city in case it should be reversed as to the railway company. Because of the conclusion which the court has reached, the question thus presented need not be decided.

The judgment of the district court is affirmed.