342 So.2d 244 (1977)
Raymond LEWIS et al.
v.
FIREMAN'S FUND INSURANCE CO. et al.
No. 7765.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
*245 George W. Reese and Gilbert Bernstein, New Orleans, for plaintiffs-appellants.
Dillon & Williams, Gerard M. Dillon, New Orleans, for defendants-appellees.
Before SAMUEL, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
Plaintiffs have appealed from a judgment, rendered after a trial on the merits, which dismissed their wrongful death action against the Department of Recreation of Jefferson Parish, the Drainage & Sewerage Department of Jefferson Parish and the Parish's insurer.
The suit was based on the drowning of plaintiff's seven-year-old daughter, Gwen, in a drainage canal which formed the western boundary of the Marrero Action Playground. Across the canal from the playground was the subdivision where plaintiffs lived, and the subdivision residents had access to the playground by several footbridges built by the Parish across the canal.
On the day of the accident a heavy rain had occurred, and the 18-foot wide canal had overflowed its east bank, so that the canal waters extended as far as 60 feet onto the playground. After the rain stopped, Gwen and her 13-year old brother went outside of the house to play. They and several other neighborhood children eventually made their way to the playground and splashed in the shallow (12 to 18 inches deep) overflow waters. Gwen drowned when she inadvertently stepped off the canal bank into the deeper water.
Considerable testimony established that this flooding occurred after every heavy rain and that when such conditions existed, one could not readily identify the location of the unfenced and unmarked canal bank covered by the overflow waters. The following photograph shows the condition of the drowning scene shortly after the tragedy:
*246 The trial court found that the canal, with its bank obscured, constituted a trap or latent hazard, as was found in Sears v. City of Springhill, 303 So.2d 602 (La.App. 2nd Cir. 1974). However, the suit was dismissed on the basis that the evidence did not show the Parish of Jefferson was either the owner or the operator of the playground.
We agree that the well-known condition which frequently existed on the playground constituted a latent hazard and that the operator of the playground had a duty to those lawfully on the premises to remedy the hazard or to provide adequate warning of its existence. We disagree, however, that the Parish was not a proper party upon whom liability should be imposed for the clearly proved breach of this duty.
The Marrero Action Committee (M.A.C.), formed in 1967 to provide recreation for area residents, had obtained the owner's permission to use the property as a playground and had on February 1, 1968 entered into a three-year, rent-free lease of the property for that purpose. Under the terms of the lease contract M.A.C. provided liability insurance. At M.A.C.'s request the Parish cleared the land, erected certain playground equipment, and thereafter maintained and cleaned the grounds.
When the lease expired in 1971, M.A.C. moved most of its activities to another playground, cancelling the electric service and leaving a fire-damaged concession stand unrepaired. However, M.A.C. continued to conduct an afternoon baseball program for smaller boys at the Marrero Action Playground.
The time that the Parish became more involved in the operation of the playground is not clearly shown in the record, but at some time after 1968 the Parish created Playground District 12 which encompassed the general area of the Marrero Action Playground. In June, 1972 the Parish contracted with M.A.C. for the purpose of supplying recreational equipment and activities to the residents in a designated area of Playground District 12. Under the contract the Parish agreed to turn over to M.A.C. one-fifth of the net proceeds of an ad valorem tax imposed in the district, and M.A.C. agreed to conduct recreational programs on Marrero Action Playground in conjunction with the policies of the Jefferson Parish Recreation Department.[1]
Although the Recreation Department operated playgrounds and recreation programs in every other district in the parish, the Parish used booster clubs as contractors (under contracts identical to M.A.C.'s) in the remaining areas of District 12 and in District 13. Marrero Action Playground was the only one not owned by the Parish, but was specifically listed in the Parish's master liability insurance policy which named every covered playground.[2] In our opinion the record adequately establishes that the Marrero Action Playground was one of those playgrounds utilized by the Parish in operating a parish-wide recreation program with public funds. The fact that the Parish delegated the publicly funded operation of this particular playground did not relieve the Parish of its duty to protect those using the public playground from latent hazards on the premises. Under the circumstances of this case we conclude that the Parish breached its duty and is liable for plaintiffs' damages.
In urging contributory negligence, defendants contend that one of Gwen's brothers testified he told her "to get away from the canal". However, the gist of the testimony was that when he arrived Gwen and *247 about ten other children were playing in the water and he "figured the canal had to be out that way", but that he heard Kevin yell and didn't see her slip into the canal and "(w)hen I got over there, she was far out there". A woman seated on a nearby porch could not see Gwen but heard a little boy say "don't go over there" and "give me your hand" and then "Oh, Lord have mercy".
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances. Smolinski v. Taulli, 276 So.2d 286 (La.1973). We conclude that defendants, who have the burden of proving contributory negligence, have failed to prove that Gwen's conduct was substandard for a reasonable seven-year old child under similar circumstances or that any adequate warning was given in time to prevent the casualty.
The funeral expenses were $676.10. Gwen was plaintiffs' only daughter and had lived with her parents and brothers all of her life. We set an award of $20,000.00 to each parent as compensation for the loss of love and affection.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that judgment be rendered against defendants and in favor of Raymond Lewis in the amount of $20,676.10 and in favor of Alma Lewis in the amount of $20,000.00, together with legal interest from the date of judicial demand until paid and all costs in both courts.
REVERSED AND RENDERED.
NOTES
[1] At the time of the accident in 1973 M.A.C. was apparently composed of or controlled by different persons than those who were the original organizers, and the record is not precisely clear as to what was done by M.A.C. in 1973 under its original program and what was done as contractor for the Parish. (For example, there were Recreation Department baseball leagues conducted on the playground at the time.) However, the Parish Finance Director testified as to the Parish's involvement in 1973, and our recitation of facts on that point is based primarily on this testimony.
[2] The Parish also paid the premiums (at least in 1973) on the liability insurance policy which M.A.C. had originally obtained under its lease contract with the land owner.