(847 P.2d 1344)
No. 68,111

ALLEN R. CHADWELL, *Appellant*, v. SANDRA CLEMENTS, *Defendant*, BEECH AIRCRAFT CORPORATION, *Defendant/Intervenor/Appellee*, and KANSAS WORKERS COMPENSATION FUND, *Intervenor*.

Opinion filed March 5, 1993.

*James T. McIntyre* and *Kevin M. McMaster*, of McMaster & McMaster, of Wichita, for appellant.

*Jeff C. Spahn, Jr.*, of Martin, Pringle, Oliver, Wallace & Swartz, of Wichita, for appellee.

Before LEWIS, P.J., PIERRON, J., and DONALD L. WHITE, District Judge Retired, assigned.

PIERRON, J.: The plaintiff/appellant Allen Chadwell was injured when the defendant, Sandra Clements, struck him with her car. Chadwell was using a crosswalk which connected a parking lot and the Beech aircraft plant when the accident occurred. Chadwell, a Beech employee, claims Beech had undertaken to maintain the crosswalk and therefore owed him a duty to keep the crosswalk safe. The district court held Beech had no such duty and

granted Beech's motion for summary judgment. Chadwell appeals, claiming the judge erred in interpreting the law regarding Beech's duty. We affirm.

In his case against Beech, Chadwell claimed that certain past actions taken by Beech proved it had undertaken to make the crosswalk safer, thus creating a duty under Restatement (Second) of Torts § 323 (1965). Chadwell claimed that Beech breached this duty and was liable to him for negligence. The facts of the case are not disputed.

The crosswalk where Chadwell was injured was marked, but it was not controlled by a signal light. There was a light-controlled crosswalk further down the street across from the plant's main entrance. The activities leading to the installation of the light provided the foundation for Chadwell's claim.

Chadwell based his claim on the fact that a Beech security guard had, in the past, directed traffic on the street during peak crossing hours. Beech had conducted a pedestrian count and requested that Sedgwick County, the governmental authority responsible for maintaining the street, install a new crosswalk and a signal light at an existing crosswalk and designate a no-parking area. There was evidence that Beech made several requests after the accident, including a request that the county provide new crosswalk signs to replace existing signs. The county complied and Beech installed them. Beech purchased speed zone beacons, which the county installed.

Mark Borst, the county official responsible for handling these requests, testified that any member of the public may request signs or markings, but the county decides whether to grant the request. He stated the county is responsible for conducting a study to determine if a crosswalk or markings should be installed, but the county has no specific criteria for granting these requests. He noted that the county does follow the standard set out in the Manual on Uniform Traffic Control Devices (MUTCD). Borst testified that according to the MUTCD guidelines, pedestrian traffic at the intersection where Beech wanted a lighted crosswalk was not sufficient to warrant a signal. The county installed the signal anyway, based on the engineer's decision that the combination of pedestrian and vehicle traffic at one particular crosswalk during peak hours warranted a signal. Borst also testified

he was not concerned about the traffic level at the crosswalk where the accident occurred, based on the use estimate supplied by Beech.

The only other evidence that supports Chadwell's claim was deposition testimony by a Beech employee.

The employee testified that in the past a Beech security guard had directed traffic at the crosswalk where the signal was installed. There was no evidence that showed Chadwell knew of the security guard's actions or Beech's requests to the county.

Based on a review of the facts and law, the trial judge determined Beech had not undertaken to maintain the crosswalks. The court held there was insufficient evidence to support the contention that Beech controlled the street or the crosswalk.

Chadwell cites as error the court's application of the law regarding Beech's duty. Chadwell also contends that Beech is a "phantom tortfeasor" whose fault should be compared before allowing Beech to collect a workers compensation lien filed against his recovery from Clements. This is only an issue if this court determines Beech owed Chadwell a duty of due care which was breached.

Chadwell bases his argument on two theories. He claims Beech had a duty to provide a safe working environment, including the area surrounding the plant. Chadwell argues Beech breached this duty because the crosswalk was not safe. He also argues Beech gratuitously undertook to make the crosswalk safe and then failed to use reasonable care in carrying out the undertaking.

We first must determine if the court erred by granting the motion for summary judgment.

A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." K.S.A. 1992 Supp. 60-256(c). The appellant argues that there were questions of material fact regarding whether Beech had a duty of care to him. However, determination of whether a duty exists is a question of law to be determined by the court. *Hackler v. U.S.D. No. 500*, 245 Kan. 295, 297, 777 P.2d 839 (1989). Appellate review of questions of law is unlimited. *Southwest Nat'l Bank of Wichita v. ATG Constr. Mgt., Inc.*, 241 Kan. 257, 265, 736 P.2d 894 (1987).

The facts necessary to determine control of the street, crosswalk, and signs are essentially undisputed. The court was correct in ruling on the question of whether a duty existed.

The second issue is whether Beech failed to provide a safe working environment.

Chadwell's statement that an employer has a duty to provide a safe working environment "including structure and surroundings" was enunciated in *Uhlrig v. Shortt,* 194 Kan. 68, 71, 397 P.2d 321 (1964). The word "surroundings" has not been defined by a Kansas court. Both parties cite cases from other jurisdictions to support their arguments.

The appellant argues that, in this case, "surroundings" should include the public street between the plant and the parking lot. The appellee claims that "surroundings" should not include property over which it has no control.

The appellee cites two cases in which federal courts have held a business has no duty to protect invitees from injuries that occur off the business premises. In one of these cases, *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 433 (7th Cir. 1978), an injury occurred on a public street. The victim was directed to park there while waiting to unload his truck. There was evidence the business knew the street was unsafe. However, the court held the business owed no duty to the victim because the business did not control the street. The court stated that it was following the rule applied by other jurisdictions which holds that streets are not included within the definition of "premises." The reason for the rule, according to the court, is "that there is no right of control over the public thoroughfare." 573 F.2d at 433. The second case, *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98 (5th Cir. 1990), reached a similar result.

The appellant cites two cases which he interprets as creating liability for an owner in Beech's position. In *Lewis v. Fireman's Fund Ins. Co.,* 342 So. 2d 244 (La. 1977), a Louisiana parish was held liable for the accidental death of a child who drowned while playing in a public playground. A drainage canal which abutted the playground regularly overflowed its banks. On the day in question, the child was playing in the overflow when she inadvertently stepped off the bank and drowned. The court held that the parish was liable because the overflow was a latent defect of

which the parish was aware and that the parish had a duty to warn those using the playground of the danger. 342 So. 2d at 244. The case can be distinguished from the instant case, however, because the question of whether the injury occurred on parish premises, or an area over which the parish had control, was not raised.

The other case cited by the appellant can also be distinguished. In *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909 (7th Cir. 1985), the court held that one who treats his neighbor's land as his own may be responsible for accidents which occur on the neighbor's land. 757 F.2d at 914. In *Orthmann*, the defendants were several businesses who had joined together in a commercial venture called the Floater's Association. Patrons rented inner tubes and floated down a river. Most of the land was owned by the defendants. One parcel was owned by a family who was not a party to the venture. Floaters would frequently stop on this property to swim and dive from a tree overhanging the river. Orthmann stopped to dive from the tree. Because the line was long, he decided to dive from another spot. The water was too shallow for diving and he was injured. Orthmann sued the association, claiming it breached its duty of care to him.

The only question addressed by the court in *Orthmann* was whether the case could be dismissed under Fed. R. Civ. Proc. 12(b)(6) (failure to state a claim). The trial court ruled it could be dismissed because the association did not own the property. The appellate court reversed, holding *control* of the land, not only ownership, could create liability. The case was remanded to determine whether the defendants exercised sufficient control of the land to create liability. 757 F.2d at 915-16. In the instant case, the trial court has already considered whether Beech exercised enough control over the crosswalk to create liability and found that it did not.

Both the appellant and appellee cite cases dealing with the definition of "premises." In the instant case, the word at issue is "surroundings." No Kansas case which uses the term "structure and surroundings" defines surroundings. The "structures and surroundings" phrase first appears in the syllabus of a case decided in 1903. However, the term "surroundings" is not used in the body of the opinion and the definition of surroundings was not

an issue in the case. *Emporia v. Kowalski,* 66 Kan. 64, 71 Pac. 232 (1903).

A reading of the cases leads to the conclusion that "surroundings" is limited to the areas in or immediately around the workplace in the control of the employer. See, *e.g., Uhlrig v. Shortt,* 194 Kan. 68; *Schwarzschild v. Drysdale,* 69 Kan. 119, 76 Pac. 441 (1904). It was not intended to include public areas which are outside the business premises or outside the area where the employee is to perform his or her job.

Because the alleged unsafe "surrounding" area in this case was a public street over which the appellee had no authority or control, the trial court's decision should be affirmed.

The essential question we must now resolve is whether Beech gratuitously assumed the duty to make the crosswalk safe.

Chadwell argues that Beech's actions (requesting a light and signs, having a guard direct traffic, installing signs purchased by the county, and purchasing beacons which the county installed) created a duty under Restatement (Second) of Torts § 323 and § 324A (1965). Chadwell believes Beech gratuitously undertook to make the crosswalk safe, thereby creating a duty to use reasonable care in completing the undertaking.

The Kansas Supreme Court first adopted the principles upon which § 324A of the Restatement is based in 1912. See *Jenree v. Street Railway Co.,* 86 Kan. 479, 121 Pac. 510 (1912). This section states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In *Jenree v. Street Railway Co.,* 86 Kan. 479, the City of Kansas City contracted with the Street Railway Company (Railway) to allow it to operate streetcars in the city. One condition of the contract was that Railway, not the City, would be re-

sponsible for repairing and maintaining the viaducts. The appellant was injured on a sidewalk that was part of the viaduct maintained by Railway. The Kansas Supreme Court held Railway liable because of the contract. The court stated that when Railway entered into the contract with the condition to keep the viaducts in good repair, it undertook to share the City's duty to the public. 86 Kan. at 482-83.

It is clear that in the instant case there was no contract which created a duty. The question then becomes whether Beech gratuitously undertook to render the service and whether the service was accepted. In *Gooch v. Bethel A.M.E. Church,* 246 Kan. 663, 669, 792 P.2d 993 (1990), the Kansas Supreme Court held that § 324A creates liability when one party undertakes to perform services for another. The court said: "In all the cases [where § 324A was held to create a duty] there was some duty by another to a third person assumed by the party sought to be held liable which, when the duty was breached, led to the injury of the third person." 246 Kan. at 673.

The court in *Gooch* also stated that merely rendering a service is not sufficient to create a duty under § 324A. "[T]he person to whom the services are directed must accept such services in lieu of, or in addition to, such person's obligation to perform the services." 246 Kan. at 676.

This requirement means the county would have been required to accept Beech's services in order for these services to have created a duty to Chadwell. See *Gooch,* 246 Kan. at 670, *Schmeck v. City of Shawnee,* 232 Kan. 11, 651 P.2d 585 (1982). It is clear from Horst's deposition testimony that the county did not accept any service rendered by Beech prior to Chadwell's accident. After the accident, Beech and the county did cooperate in posting signs. However, there is no indication that Beech assumed the entire duty or that the county viewed Beech's actions as an assumption of the county's obligation to maintain the road and crosswalks. The interpretation posited by the appellant is that Beech was rendering the service to him. However, § 324A applies to injuries to third parties. If Chadwell is placed in the role of "receiver," there is no third party and § 324A does not apply.

The appellant also argues that § 323 created a duty. § 323 states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

It is clear from the evidence that Chadwell did not rely on the crossing guard. In fact, Chadwell was not aware that a guard had directed traffic at the intersection prior to his accident. Thus, no duty arises under subsection b. The only question remaining is whether Beech created a duty under subsection a. The trial court held that no duty arose because Beech's actions did not rise to the level of control necessary to create liability. Assuming, arguendo, that the security guard's actions did create a duty, Beech still is free from liability because it adequately carried out the duty.

Comment c to § 323 states that an actor may discontinue services at any time so long as his or her efforts have not worsened the other party's position. If the other party's situation is made worse, the actor can only discontinue service in a way that does not create an unreasonable risk of harm to the other party. Restatement (Second) of Torts § 323, comment c (1965).

Once a light was erected at the crossing where the Beech security guard had been directing traffic, Beech had adequately discharged its duty and could safely discontinue the service.

Beech had never undertaken to make the crosswalk where the appellant was injured any safer. Therefore, it had no reason to continue to provide services. Moreover, it would be reasonable to conclude that insuring a safer crosswalk at the main crossing area would be an adequate discharge of any duty owed to the victim.

The recent decision of *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992), appears to buttress this analysis. In *Honeycutt*, a school district was held not to have assumed the obligation of making a railroad crossing safe for children simply because it had taken some measures to make the crossing safer.

The facts here, although, of course, different in some respects, lead to the same conclusion.

Under the facts of this case, where the county merely adopted some suggestions by an employer to make the crossing of a public street safer for its employees, no duty was created or assumed by the employer.

We finally must determine whether the court erred by ruling that Beech's comparative fault could not be considered under K.S.A. 1992 Supp. 60-258a.

Although a tortfeasor does not have to be joined in an action in order to have his fault considered, the unjoined party must be found to have contributed to the accident. Otherwise, there would be no fault to consider. *See Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978).

In order to compare the fault of Beech with other tortfeasors, the court was required to find Beech owed the appellant a duty which was breached. Finding none, the court did not consider whether Beech should share in the responsibility for the accident. The appellant argues this was error. It is not clear whether the appellant feels the error was the decision that Beech owed no duty or the decision not to consider fault. Based on the foregoing analysis, both arguments fail.

Affirmed.