2001 OK 63

Vernon L. DANIELS, Plaintiff–Appellant,

v.

UNION BAPTIST ASSOCIATION and Tom Cole, Defendants–Appellees.

and

Parkview Baptist Church, Inc., New Covenant Baptist Church, Inc., Duane Cowdin, Shirley Cowdin, Gerald Clark, and Cyndi Dyer, Defendants.

No. 94,671.

Supreme Court of Oklahoma.

July 3, 2001.

Rehearing Denied Oct. 15, 2002.

William C. Hall, Jr., Norman, OK, for Plaintiff–Appellant.

Michael E. Smith, Holloway, Dobson, Bachman & Jennings, Oklahoma City, OK, for Defendants–Appellees.

OPINION

WATT, Vice Chief Justice.

## FACTS AND PROCEDURAL BACKGROUND

¶ 1 Only two defendants in this suit, Reverend Tom Cole and Union Baptist Association, are parties to this appeal. The claims against the other defendants, Parkview Baptist Church, Inc., New Covenant Baptist Church, Inc., Duane Cowdin, Shirley Cowdin, Gerald Clark, and Cyndi Dyer, remain pending in the trial court. The trial court certified its order granting summary judgment to Reverend Cole and Union Baptist Association for immediate appeal under 12 O.S. Supp.2000 § 994.

¶ 2 On February 19, 1997, at a business meeting of Parkview Baptist Church, Inc., a majority of the Parkview members in attendance voted to replace plaintiff-appellant, Reverend Vernon E. Daniels, as Parkview's pastor. At the unanimous request of those in attendance at the meeting, Defendant Appellee, Reverend Tom Cole, had been asked to serve as moderator of the meeting. Reverend Cole was the Director of Missions for Defendant Appellee, Union Baptist Association. Union Baptist Association is an association of Baptist churches, which at that time included Parkview.

¶ 3 Some eight or nine Parkview members had met with Reverend Cole twice before the February 19, 1997 meeting, once in January and again in early February 1997. The Parkview members had discussed with Reverend Cole their desire to replace Reverend Daniels as Parkview's pastor. Reverend Cole testified in his deposition that in those meetings the Parkview members had told him that a woman in the church "was threatening to bring charges against [Reverend Daniels] for sexual harassment." At the second meeting the Parkview members asked Reverend Cole to moderate a business meeting to discuss their dissatisfaction with Reverend Daniels, which Reverend Cole agreed to do only "if the church voted to do so." Reverend Cole also testified that he tells members of individual churches who consult him about problems with their pastors,

> ... that I cannot resolve it for them. They are an autonomous church and they make their decisions. Nobody tells them what their decision is. I certainly do not.

In this connection, it is undisputed that Parkview was an autonomous church and that

neither Union Baptist Association nor Reverend Cole had any authority to decide either who Parkview's pastor would be or to direct the procedures that Parkview's members would use to implement such a change.

¶ 4 Reverend Daniels sued on the ground that he was replaced as Parkview's pastor as a result of intentional and negligent acts of Reverend Cole, Union Baptist Association, and the other defendants. The trial court granted summary judgment for Reverend Cole and Union Baptist Association on the ground that it lacked subject matter jurisdiction because Reverend Daniels' claims against them involved ecclesiastical matters. The trial court held that the acts of the defendants were carried out in the context of church business and did not involve property rights under Oklahoma law. The trial court also held that there was no factual basis to support Reverend Daniels' tort claims.

### ¶ 5 ISSUES

I. Did the trial court correctly hold that Reverend Daniels' claim for damages against Reverend Cole and Union Baptist Association was ecclesiastical in nature and did not involve property rights?

II. Did the trial court correctly hold that the facts failed to present a disputed issue of material fact as to whether Reverend Daniels had a tort cause of action against Reverend Cole and Union Baptist Association?

We answer "yes" to both questions.

### I.

■ ¶ 6 Reverend Cole and Union Baptist Association contend that Reverend Daniels' claims against them are not reviewable by Oklahoma courts because Reverend Daniels' claims arise in an ecclesiastical setting. We agree. In *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976), the U.S. Supreme Court reversed the Supreme Court of Illinois, which had held that a church's proceedings to remove a bishop violated the church's regulations and were, therefore, "arbitrary." The Supreme Court held that the Illinois courts' inquiry into whether the church's decisions on matters of "discipline, faith, internal organization, or ecclesiastical rule, custom, or law" was prohibited because,

> For civil courts to analyze whether the ecclesiastical actions of a church judiciary are in that sense "arbitrary" must inherently entail inquiry into the procedures that cannon or ecclesiastical law supposedly required the church judiciary to follow, or else in to the substantive criteria by which they are supposedly to decide the ecclesiastical question. *But this is exactly the inquiry that the first Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.*

[Emphasis added.]

¶ 7 In *Fowler v. Bailey,* 1992 OK 160 ¶ 10, 844 P.2d 141, 145 we acknowledged that *Milivojevich* establishes "as fundamental the position that a church's decision as to the status of a person's church membership must be considered as binding and beyond the reviewing power of courts such as ours." Reverend Daniels argues that the rule applies only to hierarchical churches and not to churches like Parkview, which had an autonomous congregational form of government, that is one that was independent and not subject to oversight by a church hierarchy. We addressed this issue in *Guinn v. Church of Christ of Collinsville,* 1989 OK 8, note 18, 775 P.2d 766, 772. There we noted that decisions made by autonomous congregational churches "are no less fair or deserving of judicial deference than decisions made by churches structured in a hierarchical fashion. The lack of a congregation's own 'religious' court of appeals is not justification for the intervention and review by a civil tribunal." Thus, we hold that congregational churches such as Parkview are no more subject to judicial oversight than are ones with a hierarchical form of government.

¶ 8 Reverend Daniels claims, however, that *Fowler* stands for the proposition that, because Reverend Daniels is asserting a property right, Oklahoma courts should enforce them against Reverend Cole and Union Baptist Association. We disagree.

¶ 9 While it is true that, in a proper case, courts will protect property rights in an ecclesiastical setting, this is not a case where such an exception would arise. In *Fowler* we observed that courts will resolve property disputes *"between rival factions of a church."* 844 P.2d 141, 1992 OK 160 ¶ 6. [Emphasis added.] Indeed, we have found no case involving disputes over church property in which all the parties were not church members or church officials, all of whom either claimed some right to the property at issue or the power to control it. Here, the record will not support the claim that Reverend Cole and Union Baptist Association had any interest in or control over Reverend Daniels's unpaid past wages or his expectancy of continued employment by Parkview.

¶ 10 Union Baptist Association, through its agent, Reverend Cole, presided over the Parkview business meeting on February 19, 1997, at the request of several of its members. Only after a unanimous vote of those present at that meeting did Reverend Cole agree to moderate the meeting. Comprehensive minutes of that meeting are in the record. We note that seven of the Parkview members of the twenty-one persons present at the business meeting voted against the motion to replace Reverend Daniels. Even the seven members who resisted Reverend Daniels' replacement as pastor, including Parkview's assistant pastor, Bill Blair, approved Reverend Cole's presiding over the meeting. The minutes of the meeting make clear that Reverend Cole made no attempt to exert any influence on any decision made at the meeting.

¶ 11 We hold that the Reverend Cole's act of presiding over Parkview's February 19, 1997 business meeting was exempt from judicial scrutiny because it occurred in an ecclesiastical setting. Reverend Cole acted as Union Baptist Association's Director of Missions at the behest of one of the Association's member churches. The exception to the rule

we recognized in *Fowler* does not apply to either Reverend Cole or Union Baptist Association because neither had any power to replace Reverend Daniels as Parkview's pastor. Further, for the reasons discussed in part II of this opinion, neither Reverend Cole nor Union Baptist Association owed a duty to Reverend Daniels to take affirmative steps to help him keep his job. We expressly decline to address the issue of whether the *Milivojevich* rule or the *Fowler* exception to that rule applies with respect to the defendants in this case who are not parties to this appeal.

## II.

¶ 12 Reverend Daniels contends that Reverend Cole and Union Baptist Association committed two torts against him: (1) malicious interference with contract, and (2) negligence. We hold that the facts presented by the record in this appeal support neither theory.

¶ 13 In *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 1979 OK 41 ¶ 5, 595 P.2d 427, 428 we identified the elements necessary to establish a cause of action for malicious interference with contract or business relations:

In order to recover in such an action, a plaintiff must show:

1. That he or she had a business or contractual right that was interfered with.

2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.

3. That damage was proximately sustained as a result of the complained of interference.

¶ 14 The facts in *Mac Adjustment* are instructive here. Mac was in the business of adjusting insurance claims for insurance companies. One of the companies for which Mac did work was Mutual of Iowa. Iowa Mutual belonged to defendant Property Loss Research Bureau, which was an unincorporated association of one-hundred insurance companies. It was undisputed that Bureau had no authority to decide which adjustment companies handled its members adjustment business. Iowa Mutual withdrew its busi-

ness from Mac after Bureau investigated Mac's handling of Mutual's claims and found them "questionable." We reversed a jury verdict that had been returned in favor of Mac on the ground that the facts presented were, as a matter of law, insufficient to support a cause of action for malicious interference with contract. We held:

> ... Although the fact that Bureau's report to Iowa Mutual Insurance Company may have caused Iowa Mutual to investigate Mac's handling of their business, no malicious or wrongful intent was shown. *Here, the Bureau was merely performing its investigative service for one of its member companies and would not benefit in any way by the continuance or termination of Mac's accounts ....*

[Emphasis added.] 595 P.2d 427, 1979 OK 41 at ¶ 15.

¶ 15 Here, as in *Mac Adjustment*, defendants did the acts about which Reverend Daniels complains at the behest of third parties and those acts were not shown to have been calculated to benefit either Reverend Cole or Union Baptist Association. Reverend Daniels argues that a $100.00 payment Parkview made to Reverend Cole in March 1997 and an increase in Parkview's payments to Union Baptist Association from $40.00 per month to $86.00 per month after Parkview's members replaced Reverend Daniels was sufficient to make a *prima facie* case for intentional interference. We disagree. Reverend Cole was paid a modest stipend for moderating the meeting. The record is undisputed that the payments to Union Baptist Association were supposed to equal four percent of Sunday school offerings each month. Reverend Daniels has not shown that the amounts paid by Parkview and later its successor, New Covenant, exceeded this amount. We hold, therefore, that the fact of these payments does not support the necessary conclusion that Union Baptist Association, through its agent Reverend Cole, acted as they did for the purpose of benefitting themselves.

■ ¶ 16 As an alternative to his malicious interference with contract claim, Reverend Daniels takes the position that Union Baptist Association and its agent, Reverend Cole, were negligent because Reverend Cole moderated the meeting at which Parkview's members made the decision to replace Reverend Daniels as Parkview's pastor. Reverend Daniels relies on one sentence in a brochure for Union Baptist Association's annual meeting in October 1999, which described Reverend Cole as "a pastor to the pastors of Union Association." The entire paragraph, however, read as follows:

> Dr. Tom Cole is the Executive Director of Missions for Union Baptist Association. He has served Union Baptist Association for more than ten years. One of the many significant ministries he performs is to be a pastor to the pastors of Union Association. When a pastor needs advice or a listening ear, he can turn to Tom for prayer support, encouragement and Biblical help. There are also times when a congregation is without a pastor and they can turn to Tom for assistance in their search for God's man to lead their congregation.

¶ 17 Reverend Daniels claims that the description of Reverend Cole as "pastor to the pastors" in Union Baptist Association's brochure would support a jury's finding that Union Baptist Association through its agent Reverend Cole had undertaken a duty to be an advocate on the Reverend Daniels's behalf. To reach such a conclusion, however, one would first have to assume that Reverend Cole had a duty to Reverend Daniels to seek to resist his replacement as Parkview's pastor, although it was clear that many Parkview members wanted Reverend Daniels replaced. Reverend Cole undertook only to be an unbiased moderator of a church business meeting. The minutes of the February 19, 1997 meeting reflect that Reverend Cole carried out that duty. Reverend Cole had been told that there was a claim of sexual harassment against Reverend Daniels from a Parkview member. Under these circumstances, Reverend Cole's duty was to Parkview itself, not to either Reverend Daniels or those Parkview members who wanted Reverend Daniels replaced. We hold, therefore, that Reverend Daniels cannot be subjected to tort liability because he did not take sides in the dispute.

■ ¶ 18 It is fundamental that before one may be held liable for negligence he must

have owed a duty to the plaintiff. *Grover v. Superior Welding, Inc.,* 1995 OK 14 ¶ 5, 893 P.2d 500, 502. For the reasons previously stated, we find that there are no facts in this record that could support an inference that Reverend Cole or Union Baptist Association had a duty to advocate Reverend Daniels's case.

## SUMMARY

¶ 19 Reverend Cole and Union Baptist Association are exempt from judicial scrutiny for claims arising as a result of Reverend Cole's having moderated Parkview's February 19, 1997 business meeting. Reverend Cole and Union Baptist Association were acting in aid of a member church and neither had any authority to cause the replacement of Reverend Daniels as Parkview's pastor and the record is clear that they made no attempt to exert influence over Parkview's deliberations on this score.

¶ 20 Union Baptist Association and Reverend Cole had nothing to gain either from Reverend Daniels' replacement or his retention. Thus, Reverend Daniels's malicious interference with contract claim is insupportable. Similarly, Reverend Daniels's negligence claim must fail, too, because Reverend Cole owed no duty to Reverend Daniels to help Reverend Daniels retain his job. Reverend Cole's duty was to Parkview and he discharged that duty by moderating Parkview's business meeting in an unbiased way, taking sides with neither the faction of Parkview's members that wanted Reverend Daniels replaced nor the faction that wanted him retained.

¶ 21 CERTIORARI GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, JUDGMENT OF THE DISTRICT COURT AFFIRMED.

¶ 22 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, OPALA, SUMMERS, BOUDREAU, and WINCHESTER, JJ.—concur.

¶ 23 KAUGER, J.—concurs in result.