2004 OK 5

**Jennifer K. TEETER, Plaintiff/Appellant,**

**v.**

**CITY OF EDMOND, Oklahoma and the State of Oklahoma ex rel. University of Central Oklahoma Board of Regents, Defendants/Appellees.**

**No. 99,158.**

Supreme Court of Oklahoma.

Feb. 3, 2004.

Randy P. Conner, Oklahoma City, OK, for Plaintiff/Appellant.

Stephen T. Murdock, Edmond Oklahoma, for Defendant/Appellee City of Edmond.

Susan K. Noland, Asst. Atty. Gen., Oklahoma City, OK, for Defendant/Appellee State of Oklahoma ex rel. University of Central Oklahoma Board of Regents.[1]

EDMONDSON, J.

¶ 1 This controversy presents two primary issues. The first is whether summary judgment was properly granted to the City of Edmond on Plaintiff's claim that she was injured because of an improperly maintained crosswalk. The second is whether the University of Central Oklahoma owed Plaintiff a duty to install additional traffic signs to create a different and safer crosswalk on a public street not maintained by the University. We answer the first in the negative. Summary judgment should not have been granted on her claim against the City. We answer the second question also in the negative, and thus affirm summary judgment granted to the University.

¶ 2 Plaintiff (Teeter), a student at the University of Central Oklahoma (UCO), walked across University Boulevard and was struck by a motor vehicle and seriously injured. University Boulevard is a four-lane street maintained by the City of Edmond and which borders UCO.

¶ 3 Both the City of Edmond and UCO moved for summary judgment, contending that each was immune pursuant to the Governmental Tort Claims Act, (GTCA), 51 O.S. 1991 § 151, et seq., as amended.[2] Summary

---

1. The record before the Court shows one other appearance by staff from the Office of the Oklahoma Attorney General, Linda L. Samuel–Jaha, on behalf of the University of Central Oklahoma Board of Regents.

2. The Court has said that provisions of the G.T.C.A. applicable in a particular controversy are those in effect when the alleged injuries occurred. *Moran v. City of Del City,* 2003 OK 57,

judgment was granted to both Defendants by separate orders filed the same day. Teeter filed two motions for new trial and the District Court denied the motions.

¶ 4 The City of Edmond argued that any alleged failure on its part to install additional lights or traffic markings involved a discretionary decision, and that the City is immune when making such decisions. The City also argued that the cause of Teeter's injuries was the driver of the motor vehicle that hit her, and not the City. However, the City cited no authority on the causation issue, or made further legal argument.

¶ 5 UCO stated that it had never placed any street signs or traffic control lights on the street, it did not maintain University Boulevard, and that at no time had access pedestrian cross-walks on University Street been blocked or inhibited by construction on UCO campus. UCO then contended that even if there had been construction trucks or any other vehicle illegally parked on the city crosswalk, it would not be responsible, relying upon 51 O.S.Supp.1994 § 155(15) & (18).

¶ 6 Teeter responded to the two motions for summary judgment. She alleged that both the City of Edmond and the University knew that University Boulevard was dangerous to pedestrians. UCO was concerned for the safety of its students, and had requested that the City of Edmond install a four-way stop or signal light on University Boulevard. UCO obtained permission from the City of Edmond to install flashing pedestrian warning signs which the University purchased.

¶ 7 Pedestrian crosswalks had been painted across University Boulevard. Teeter alleged that the crosswalks needed repainting at the time her injuries occurred. Subsequent to her injuries the crosswalks were repainted, and a four-way stop was installed on University Boulevard. She also alleged that construction being performed by contractors on the University prevented her from using the pedestrian crosswalks. In her deposition she stated that no construction activity was in the crosswalk; but a truck was parked, blocking the crosswalk,

and caused her to walk around it in order to cross the street.

¶ 8 Teeter filed motions for new trial, and argued that the question of liability for both UCO and the City of Edmond was based upon whether UCO and the City undertook the task of protecting the safety of students by installing and then failing to adequately maintain the crosswalk.

## I. The Claim Against the City of Edmond

■ ¶ 9 Governmental immunity of a subdivision of the State is waived only to the extent and in the manner provided in the GTCA. *Moran v. City of Del City*, 2003 OK 57, ¶ 6, 77 P.3d 588, 590. However, the GTCA also provides certain exemptions from this liability. 51 O.S.Supp.1994 § 155 is one of these. The City of Edmond argued that it was immune because of 51 O.S.Supp.1994 § 155(5) & (15). These provisions state:

The state or a political subdivision shall not be liable if a loss or claim results from:

. . .

5. Performance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees; . . .

15. Absence, condition, location or malfunction of any traffic or road sign, signal or warning device unless the absence, condition, location or malfunction is not corrected by the state or political subdivision responsible within a reasonable time after actual or constructive notice or the removal or destruction of such signs, signals or warning devices by third parties, action of weather elements or as a result of traffic collision except on failure of the state or political subdivision to correct the same within a reasonable time after actual or constructive notice. Nothing herein shall give rise to liability arising from the failure of the state or any political subdivision to initially place any of the above signs, signals or warning devices. The signs, signals and warning devices referred to herein are those used in connection with hazards normally connected with the use

n. 2, 77 P.3d 588, 590. The alleged injuries occurred in April 1995.

of roadways or public ways and do not apply to the duty to warn of special defects such as excavations or roadway obstructions; ...

51 O.S.Supp.1994 § 155(5) & (15).

¶ 10 We discussed § 155(5) in *Robinson v. City of Bartlesville Board of Education,* 1985 OK 39, 700 P.2d 1013. We first explained that no liability attaches to a discretionary act.

> We have previously held that allegations of failure to install and maintain traffic control devices, failure to provide patrol service, and failure to light the streets are allegations of failure to perform discretionary functions. It is clear that if the installation and maintenance of the sunken drain in the school parking lot was a discretionary function of the School Board, then there can be no liability, and the demurrer was correctly sustained.

*Id.* 700 P.2d at 1015.

We then quoted from *Harrigan v. City of Reno,* 86 Nev. 678, 475 P.2d 94 (1970) and explained that liability could flow from ministerial or operational acts.

> But there is a distinction to be drawn between acts of a municipal body that are discretionary and acts that are ministerial or operational. In *Harrigan v. City of Reno* the plaintiff was injured when she was blown by a gust of wind from a city parking lot with a drop-off of several feet with no guardrail. The City, with a comparable tort-claims act, argued that failure to install a guardrail was a matter of discretion, for which the City had immunity. The Court, however, held:
>> "In determining whether this is a proper case for departure from governmental immunity we must first ask what the act of the city was. The answer is, that it built a parking lot. The city need not have constructed the parking lot because that was an exercise of discretion based upon policy, that is, whether or not the municipality would provide a public parking facility adjacent to its city hall for the convenience of the people. Its decision to do so was a policy, or discretionary, decision. Once having decided to construct a parking lot the city was obligated to use due care to make certain that the parking lot met the standard of reasonable safety for those who would use it. Such was the operational stage for which the statute does not exempt the city from liability if due care has not been used and an injury is caused."

*Robinson v. City of Bartlesville Bd. of Education,* 700 P.2d at 1015–1016.

In *Walker v. City of Moore,* 1992 OK 73, 837 P.2d 876, we said:

> Maintaining the existing pavement markings, the purpose of which is to warn that two lanes are merging into one lane, is operational and a ministerial function. Negligence in the performance of that ministerial function subjects the City to liability. That is, the maintenance of the existing pavement markings is not within the discretionary exemption of the Governmental Tort Claims Act.

*Walker,* 837 P.2d at 879.

¶ 11 Teeter claimed that the City of Edmond failed to adequately maintain the crosswalk. A crosswalk may be created by painted lines on a road surface.[3] Teeter stated that the painted lines on the road surface were worn and insufficient for slowing traffic. This is a claim against the City for not maintaining what it has installed, a failure of performance which is not discretionary but operational. Such a claim is not barred by § 155(5). *Robinson v. City of Bartlesville Bd. of Education, supra, Walker v. City of Moore, supra.*

¶ 12 Teeter also claimed that the crosswalk was inadequately maintained in that additional traffic signs were necessary

---

**3.** 47 O.S.1991 § 1–111:

§ 1–111. Crosswalk

(a) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway;

(b) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

for this crosswalk. Teeter does not allege that additional traffic signs are necessary for all crosswalks, but that this particular location, with its volume of traffic and number of pedestrians, needed additional signs to make a crosswalk safe for pedestrians. A claim based upon these allegations is barred by another provision of the GTCA invoked by the City, § 155(15), which states: "Nothing herein shall give rise to liability arising from the failure of the state or any political subdivision to initially place any of the above signs, signals or warning devices." Teeter does not argue for the exception in § 155(15) relating to signs for "special defects," so her claim against the City based upon a failure to initially place additional signs must fail.

¶ 13 Teeter also makes an allegation that the City of Edmond failed to warn pedestrians of unsafe conditions created by the City's alleged negligence. The language in § 155(15) relating to a failure to initially install traffic signs includes "warning devices," so Teeters' claim of a failure to provide a warning by not installing either signs or devices would also be barred by § 155(15).

¶ 14 In summary, Teeter's allegations relating to the City's failure to initially place additional traffic signs or warning devices related to the crosswalk are insufficient to reverse the trial court's summary judgment granted to the City. However, the City's reliance upon the GTCA is not sufficient for summary judgment against Teeter on her allegations that the City failed to maintain the pavement markings and thereby created an unsafe crosswalk that caused her injuries. The summary judgment granted to the City on this claim must be reversed.

## II. The Claim Against UCO

■ ¶ 15 Teeter argues on certiorari that UCO knew traffic on University Boulevard was dangerous to the pedestrians, voluntarily assumed the obligation of providing safe access across University Blvd., and failed to meet this obligation. UCO's motion for summary judgment asserts that it does not maintain the street or the crosswalk. Teeter's materials in responding to summary judgment note a request from UCO to the City of Edmond for a traffic plan to benefit the

pedestrian traffic on University Boulevard, and refer to UCO's purchase of pedestrian warning lights that the City authorized for University Boulevard. No allegation is made that these warning lights were functioning improperly or were inadequately maintained.

¶ 16 Teeters' certiorari petition argues that UCO "undertook the task of making it safe to cross University Street by installing flashing lights, ..." A similar allegation was made in response to UCO's motion for summary judgment. Teeter's conclusion is that UCO is liable because it assumed the duties, with the consent of the City, of providing a crosswalk and regulating the traffic on University Boulevard.

■ ¶ 17 Part of the police power of the state may, by the Legislature, be delegated to municipalities, boards, commissions, and subordinate state agencies. *Gibbons v. Missouri, K. & T.R. Co.*, 1930 OK 108, 285 P. 1040, 1042. A municipality's power to regulate traffic on a public street is an exercise of police power delegated from the state. *White v. City of Lawton*, 1961 OK 287, 373 P.2d 25, 27; *Ex parte Shaw*, 1916 OK 179, 157 P. 900. Generally, a delegated police power may not be redelegated. *State ex rel. Oklahoma Bar Association v. Livshee*, 1994 OK 12, n. 13, 870 P.2d 770, 773. For example, the Supreme Court of Vermont said:

In other words, "when authority to exercise the police power within a defined sphere is delegated by the state to a municipal or other public corporation, the authority is inalienable in the corporation, and it cannot in any manner be contracted away or otherwise granted, delegated, diminished, divided, or limited by the corporation."

*Vermont Dept. of Public Service v. Massachusetts Mun. Wholesale Elec. Co.*, 151 Vt. 73, 558 A.2d 215, 220 (1989), *quoting*, 6A E. McQuillin, *Municipal Corporations* § 24.41, at 116–17 (3d ed. rev.1988).

¶ 18 This principle is consistent with our recent opinion in *Oklahoma Public Employees Association v. Oklahoma Dept. of Central Services*, 2002 OK 71, ¶ 29, 55 P.3d 1072, 1084, where we explained that the statutory responsibility delegated by the Legislature to

the Department of Human Services for operating a state institution could not be delegated by that Department to a different entity. *See also Bidlingmeyer v. City of Deer Lodge,* 128 Mont. 292, 274 P.2d 821, 823 (1954), (police power over roads and streets delegated to a municipal corporation by the state cannot be surrendered, delegated, or divested by contract by that municipal corporation); *Victory Cab Co. v. Shaw,* 232 N.C. 138, 59 S.E.2d 573, 577 (1950), (a "fundamental rule" is that "a municipal corporation cannot surrender in any part or in any respect the police power delegated to it by the State").

¶ 19 UCO asked the City to address the problem of pedestrian access across University Boulevard, and not for a delegation of authority to UCO. The warning lights were purchased by UCO based upon a letter from the City to UCO that the warning lights could be used. The letter from the City contained no language stating that UCO would thereafter be responsible for regulating traffic on University Boulevard. Further, we note that the City's immunity argument on summary judgment is based upon the City's view that it, and not UCO, possesses and exercises police power in the nature of traffic regulation over University Boulevard. Teeter cites no provision of law in support of UCO possessing legal authority to control traffic on University Boulevard.

■ ¶ 20 Teeter also contends that UCO assumed a duty to provide a safe crosswalk independent of the City's police power. Elements to a claim based upon negligence include (1) a duty to the plaintiff, (2) a violation of that duty, and (3) and injury resulting from that violation. *Hesser v. Central National Bank & Trust Company of Enid,* 1998 OK 15, ¶ 12, 956 P.2d 864, 867. This Court has previously noted the Restatement (Second) of Torts § 323 (1965),[4] and its standards for attaching liability based upon one who voluntarily assumes a duty. *Jackson v. Mercy Health Center, Inc.,* 1993 OK 155, n. 9, 864

P.2d 839, 842–843. *See also,* Seavey, *Reliance on Gratuitous Promises or Other Conduct,* 64 Harv.L.Rev. 913, 928 (1951), ("Where a person represents by word or act that he has done or will do something upon the performance of which he should realize that others will rely, he is liable for expectable harm caused by the reliance of others and his failure of performance, if his representation was negligently or intentionally false, or if without excuse he fails to perform.").

¶ 21 Even if we *assume* that (1) UCO could, as a matter of law, undertake a duty to provide a crosswalk, (2) UCO did in fact assume this duty *and* (3) UCO failed to perform this duty, Teeter's allegations relating to how this duty was breached amount to a claim of *negligence,* subject to the statutory immunity provided by the Governmental Tort Claims Act. *Jackson v. Mercy Health Center, Inc.,* 864 P.2d at 842–844, (we explained that a statutory immunity was a complete defense to a claim for negligence in rendering emergency care in the nature of an assumed duty); *Nail v. City of Henryetta,* 1996 OK 12, 911 P.2d 914, 917, (the Governmental Tort Claims Act is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort).

■ ¶ 22 The University of Central Oklahoma is one of the institutions of the State of Oklahoma's System of Higher Education, and is supervised, managed and controlled by the Board of Regents of Oklahoma Colleges exercising power pursuant to statutes of the State of Oklahoma and Art. 13–B of the Oklahoma Constitution. 70 O.S.Supp.1994 § 3201; 70 O.S.1991 §§ 3501.1, 3510; Okla. Const. Art 13–B. For the purposes of the GTCA, " 'State' means the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, . . . or other instrumentality thereof . . ." 51 O.S.Supp.1994 § 152(10).

---

4. Restatement (Second) of Torts § 323 (1965):
§ 323. Negligent Performance Of Undertaking To Render Services
    One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
    (a) his failure to exercise such care increases the risk of such harm, or
    (b) the harm is suffered because of the other's reliance upon the undertaking.

UCO is thus an included entity and may invoke application of § 155(15) of the GTCA.

¶ 23 Because § 155(15) provides that no negligence-based liability rises from the failure to initially place road signs or warning devices, Teeter's claim that the University breached its alleged duty to create a safe crosswalk by failing to place additional signs, lights, or warning devices is barred by § 155(15) of the Governmental Tort Claims Act.

■ ¶ 24 Finally, Teeter alleges that trucks were parked in the crosswalk, that these trucks were those used by contractors working at UCO, and that her injuries were caused by these allegedly wrongful circumstances. UCO defends upon § 155(18) of the GTCA:

> The state or a political subdivision shall not be liable if a loss or claim results from:
>
> . . .
>
> 18. An act or omission of an independent contractor or consultant or his employees, agents, subcontractors or suppliers or of a person other than an employee of the state or political subdivision at the time the act or omission occurred;

Section 155(18) facially protects UCO from liability flowing from the acts of its independent contractors; Teeter has not pointed any authority that would restrict the application of it; and in the circumstances presented by this case it is sufficient to support the summary judgment granted to UCO. We thus conclude that summary judgment was properly granted to UCO.

### III. Conclusion

¶ 25 Summary judgment based upon 51 O.S.Supp.1994 § 155 was improperly granted to the City of Edmond on Teeter's claim that the City failed to maintain the crosswalk pavement markings and that such failure caused her injuries. This error involves a pure question of law, and is subject to reversal on appeal. *Barringer v. Baptist Healthcare of Oklahoma,* 2001 OK 29, ¶¶ 5–6, 22 P.3d 695; *Barker v. State Ins. Fund,* 2001 OK 94, ¶ 7, 40 P.3d 463. Summary judgment was properly granted to UCO based upon § 155(15) & (18). The opinion of the Court

of Civil Appeals is vacated, and the summary judgments of the District Court are affirmed in part, reversed in part, and the cause remanded to the District Court for further proceedings consistent with this opinion.

¶ 26 WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, JJ.—Concur.

¶ 27 HARGRAVE, WINCHESTER, JJ.—Concur in part, dissent in part.

