2009 OK 4

TUFFY'S, INC., an Oklahoma Corporation, and Ellen Cunningham, president/owner of Tuffy's Corporation, Plaintiffs/Appellants,

v.

The CITY OF OKLAHOMA CITY, a municipal corporation, Defendant/Appellee.

No. 105,705.

Supreme Court of Oklahoma.

Jan. 20, 2009.

Ari Varshosaz, Oklahoma City, OK, for Plaintiffs/Appellants.

Amanda Carpenter, Richard C. Smith, Oklahoma City, OK, for Defendant/Appellee.

KAUGER, J.

¶1 The issue presented is whether the trial court erred by granting the City of Oklahoma City's motion to dismiss. We hold that it did and remand the cause.

## FACTS

¶2 On November 9, 2007, Tuffy's Inc. and its president, Ellen Cunningham (collectively, the appellants) filed a petition seeking an award of actual and punitive damages against the City of Oklahoma City (the City) and the Oklahoma City Police Department (OCPD) for intentional infliction of emotional distress, negligence, and tortious interference with a business relationship. The appellants' claims arose from a November 26, 2006, incident at City Nights, a south Oklahoma City nightclub owned by the appellants. The appellants allege that police offi-

cers "... physically and verbally attacked, harassed, and assaulted numerous customers (and) used mace on customers and ordered their dogs to bite customers inside the building."[1] The appellants also allege that Oklahoma City police officers had harassed the appellants' customers on unspecified prior occasions. There is no further evidence in the record regarding the circumstances surrounding the alleged incident of November 26th or the alleged pattern of harassment.

¶3 On December 3, 2007, the City filed two motions to dismiss for failure to state a claim upon which relief could be granted,[2] one on behalf of the OCPD and one on behalf of the City. On December 10, 2007, the appellants filed their first amended petition, in which they voluntarily dismissed their claims against the OCPD and withdrew their request for punitive damages against the City.[3] The City filed a third motion to dismiss on December 17, 2007. On January 10, 2008, the appellants filed their second amended petition, in which they dismissed their claim for intentional infliction of emotional distress against the City.[4] The appellants' claim then consisted of a request for an award of actual damages against the City for negligence and tortious interference with a business relationship. On January 17, 2008, the City filed a fourth motion to dismiss, arguing that: 1) the appellants did not have standing to assert a claim on behalf of employees or customers; 2) tortious interference with a business relationship is not a viable cause of action against a municipality under the Governmental Tort Claims Act (GTCA);[5] and 3) the GTCA ex-

---

1. Petition of Tuffy's, Inc., November 9, 2007, Record, § 1, p. 2.

2. Title 12 O.S. Supp.2004 § 2012(B)(6) provides:
   ... [T]he following defenses may at the option of the pleader be made by motion:
   Failure to state a claim upon which relief can be granted.

3. Title 51 O.S. Supp.2008 § 152(9) provides:
   "Municipality" means any incorporated city or town, and all institutions, agencies or instrumentalities of a municipality.
   Although it has been moved from subsection 7 to subsection 9, the text of this portion of the statute has remained unaltered since 2006. Therefore, the current version is referenced.
   Title 51 O.S. Supp.2003 § 154(C) provides:
   No award for damages in an action or any claim against the state or a political subdivi-

sion shall include punitive or exemplary damages.

4. Plaintiffs' Response to Defendant's Motion to Dismiss, January 10, 2008, Record § 8, p. 1, provides in pertinent part:
   In order to recover for (intentional infliction of emotional distress), Plaintiff would be required to prove that Defendant's conduct was "extreme and outrageous", removing such conduct from the officer's scope of employment and thus prohibiting recovery against the municipality for such a claim. Accordingly, Plaintiff has amended its petition to exclude this cause of action.

5. Title 51 O.S. Supp 2008 §§ 151–200. For this prong of its defense, the City specifically cites to 51 O.S.2001 § 153(A), which provides:
   The state or a political subdivision shall be liable for loss resulting from its torts or the

empts a political subdivision [6] from liability for any claim resulting from the enforcement or non-enforcement of any law or statute.[7]

¶ 4 On March 7, 2008, the trial court, without discussion, entered its journal entry of judgment granting the City's motion to dismiss with prejudice.[8] The appellants filed a petition in error on March 26, 2008. We assigned the cause to the Court of Civil Appeals. On July 2, 2008, the Court of Civil Appeals affirmed, finding that political subdivisions are immune from liability for the intentional torts of their employees and for any claim arising out of the enforcement of a law. The appellants petitioned for certiorari, and we granted certiorari on November 24, 2008.

## ¶ 5 BECAUSE THE APPELLANTS HAVE PLED A CLAIM FOR WHICH RELIEF IS LEGALLY POSSIBLE, THE TRIAL COURT ERRED BY GRANTING THE CITY'S MOTION TO DISMISS.

■■■ ¶ 6 An order dismissing a case for failure to state a claim upon which relief can be granted is subject to *de novo* review.[9] When reviewing a motion to dismiss, the Court must take as true all of the challenged pleading's allegations together with all reasonable inferences which may be drawn from them.[10] The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts.[11] A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle the plaintiff to relief.[12] The

---

torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.

The term "scope of employment" is defined at 51 O.S. Supp.2008 § 152(11), which provides:
"Scope of employment" means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority including the operation or use of an agency vehicle or equipment with actual or implied consent of the supervisor of the employee, but shall not include corruption or fraud.

Although it has been moved from subsection 9 to subsection 11, the text of this portion of the statute has remained unaltered since 2006. Therefore, the current version is referenced.

**6.** Title 51 O.S. Supp.2008 § 152(10)(a) provides in pertinent part:
"Political subdivision" means ... a municipality ...

Although it has been moved from subsection 8 to subsection 10, the text of this portion of the statute has remained unaltered since 2006. Therefore, the current version is referenced.

**7.** Title 51 O.S. Supp.2004 § 155(4) provides:
The state or a political subdivision shall not be liable if a loss or claim results from:
Adoption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, char-

ter provision, ordinance, resolution, rule, regulation or written policy.

**8.** Journal Entry of Judgment, March 7, 2008, Record, § 12, p. 1 provides:
The Court, having reviewed the briefs filed by the parties, without a hearing, but for good cause shown, determined that the Defendant City of Oklahoma City's Motion to Dismiss Plaintiff's Second Amended Petition should be, and is hereby, SUSTAINED as to all causes of action (Negligence and Tortious Interference with a Business Relationship). The Court dismisses the above-styled and numbered case with prejudice. Judgment is hereby entered in favor of Defendant City of Oklahoma City and against Plaintiffs, Tuffy's Inc. and Ellen Cunningham.

**9.** *Gens v. Casady School*, 2008 OK 5, ¶ 8, 177 P.3d 565; *Darrow v. Integris Health, Inc.*, 2008 OK 1, ¶ 7, 176 P.3d 1204; *Fanning v. Brown*, 2004 OK 7, ¶ 4, 85 P.3d 841.

**10.** *Gens v. Casady School*, see note 9, supra; *Darrow v. Integris Health, Inc.*, see note 9, supra; *May v. Mid–Century Ins. Co.*, 2006 OK 100, ¶ 10, 151 P.3d 132; *Fanning v. Brown*, see note 9, supra.

**11.** *Gens v. Casady School,*, see note 9, supra; *Darrow v. Integris Health, Inc.*, see note 9, supra; *Miller v. Miller*, 1998 OK 24, ¶ 15, 956 P.2d 887.

**12.** *Tucker v. Special Energy Corp.*, 2008 OK 57, ¶ 7, 187 P.3d 730; *Gens v. Casady School*, see note 9, supra; *Darrow v. Integris Health, Inc.*, see note 9, supra; *Fanning v. Brown*, see note 9, supra.

burden to show the legal insufficiency of the petition is on the party moving for dismissal.[13] Motions to dismiss are usually viewed with disfavor under this standard, and the burden of demonstrating a petition's insufficiency is not a light one.[14]

¶ 7 The GTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort.[15] Subject only to the GTCA's specific limitations and exceptions, governmental immunity is waived under the GTCA.[16] Governmental accountability is extended to torts for which a private person would be liable, unless they are committed outside of the course and scope of employment or unless they are committed in bad faith or in a malicious manner.[17] The doctrine of *respondeat superior* is applicable under the GTCA.[18] Under the theory of *respondeat superior*, one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business.[19]

¶ 8 The GTCA defines a "tort" as a legal wrong involving a violation of a duty imposed by general law or otherwise resulting in a loss as the proximate result of an act or omission of a political subdivision or employee acting within the scope of employment.[20] "Scope of employment" is defined as performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority.[21] Except in cases where only one reasonable conclusion can be drawn, the question of whether an employee has acted within the scope of employment at any given time is a question for the trier of fact.[22] An employee of a political subdivision is relieved from private liability for tortious conduct committed within the scope of employment.[23] A political subdivision is relieved from liability for tortious conduct committed by employees outside the scope of employment.[24]

13. *Gens v. Casady School*, see note 9, supra; *Fanning v. Brown*, see note 9, supra; *Indiana Nat'l Bank v. State Dept. of Human Servs.*, 1994 OK 98, ¶ 3, 880 P.2d 371.

14. *Gens v. Casady School*, see note 9, supra; *Fanning v. Brown*, see note 9, supra; *Indiana Nat'l Bank v. State Dept. of Human Servs.*, see note 13, supra.

15. *Teeter v. City of Edmond*, 2004 OK 5, ¶ 21, 85 P.3d 817; *Nail v. City of Henryetta*, 1996 OK 12, ¶ 10, 911 P.2d 914; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449.

16. Title 51 O.S.2001 § 153(A), see note 5, supra. See *Mustain v. Grand River Dam Auth.*, 2003 OK 43, ¶ 21, 68 P.3d 991; *Pellegrino v. State ex rel. Cameron Univ.*, 2003 OK 2, ¶ 1, 63 P.3d 535; *Carswell v. Oklahoma State Univ.*, 1999 OK 102, ¶ 17, 995 P.2d 1118; *Nail v. City of Henryetta*, see note 15, supra.

17. Title 51 O.S.2001 § 153(A), see note 5, supra. See *Mustain v. Grand River Dam Auth.*, see note 16, supra; *Pellegrino v. State ex rel. Cameron Univ.*, see note 16, supra; *Carswell v. Oklahoma State Univ.*, see note 16, supra; *Nail v. City of Henryetta*, see note 15, supra.

18. *Speight v. Presley*, 2008 OK 99, ¶ 13, 203 P.3d 173; *Decorte v. Robinson*, 1998 OK 87, ¶ 12, 969 P.2d 358; *Nail v. City of Henryetta*, see note 15, supra at ¶ 11. *Respondeat superior* is a Latin phrase that translates to "let the superior an-

swer." *Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, ¶ 7 fn. 15, 81 P.3d 55.

19. *Decorte v. Robinson*, see note 18, supra; *Nail v. City of Henryetta*, see note 15, supra at ¶ 11.

20. Title 51 O.S. Supp.2008 § 152(13) provides:
"Tort" means a legal wrong, independent of contract, involving violation of a duty imposed by general law or otherwise, resulting in a loss to any person, association or corporation as the proximate result of an act or omission of a political subdivision or the state or an employee acting within the scope of employment.
Although it has been moved from subsection 11 to subsection 13, the text of this portion of the statute has remained unaltered since 2006. Therefore, the current version is referenced.

21. Title 51 O.S. Supp.2008 § 152(11), see note 5, supra.

22. *Fehring v. State Ins. Fund*, 2001 OK 11, ¶ 25 fn. 19, 19 P.3d 276; *Carswell v. Oklahoma State Univ.*, see note 16, supra at ¶ 19; *Decorte v. Robinson*, see note 18, supra at ¶ 11; *Nail v. City of Henryetta*, see note 15, supra at ¶ 13.

23. *Pellegrino v. State ex rel. Cameron Univ.*, see note 16, supra at ¶ 4; *Martin v. Johnson*, 1998 OK 127, ¶ 28, 975 P.2d 889.

24. *Pellegrino v. State ex rel. Cameron Univ.*, see note 16, supra at ¶ 4; *Martin v. Johnson*, see note 23, supra.

## A.

### The Appellants Have Standing To Bring Their Claims.

¶ 9 The City first argues that the appellants lack standing to bring any claim on behalf of customers and employees of City Nights because the petition does not allege that either Tuffy's Inc. or Ellen Cunningham were harassed or attacked. The appellants respond that they are not bringing an action on behalf of employees or customers, but instead are bringing an action to recover for damages sustained by the corporation and its owner.

¶ 10 Standing is the legal right of a litigant to challenge the conduct of another in a judicial forum.[25] A party whose standing is challenged must show a concrete, particularized, actual, or imminent injury in fact for which some relief can be given, and that the interest to be protected is within a statutorily or constitutionally protected zone.[26] The interest must be direct, immediate, and substantial, and the litigant must have a personal stake in the outcome.[27]

¶ 11 It is clear from the pleadings that the appellants do not seek to recover on behalf of employees or customers. Instead, the appellants seek recovery for financial injury to their business based on the allegedly malicious, intentional, or negligent actions of the police officers.[28] The appellants have standing to bring this cause because they have alleged that the actions of the police officers resulted in financial injury to their business.

## B.

### Under the GTCA, the City is Immune from Liability for Claims of Tortious Interference with a Business Relationship Committed By its Employees.

¶ 12 The City argues that, under the GTCA, it is immune as a matter of law from liability for any claim of tortious interference with a business relationship because bad faith is a necessary element of the tort. The appellants respond that neither malice nor bad faith is a requisite element to the cause of action, and the City is not immune from claims of tortious interference with a business relationship.

¶ 13 When a tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of employees, there can be no liability against a political subdivision in a suit based on the GTCA.[29] This is because the GTCA explicitly excludes bad faith action from its definition of the scope of employment, and a political subdivision is relieved from liability for tortious conduct committed by its employees outside the scope of em-

25. *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, 2003 OK 65, ¶ 7, 73 P.3d 871; *Hendrick v. Walters*, 1993 OK 162, ¶ 4, 865 P.2d 1232; *State ex rel. Cartwright v. Oklahoma Tax Comm'n*, 1982 OK 146, ¶ 6, 653 P.2d 1230.

26. *Oklahoma Edu. Ass'n v. State ex rel. Okla. Legislature*, 2007 OK 30, ¶ 7, 158 P.3d 1058; *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, see note 25, supra; *Brandon v. Ashworth*, 1998 OK 20, ¶ 6, 955 P.2d 233.

27. *Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City*, see note 25, supra; *Brandon v. Ashworth*, see note 26, supra; *Hendrick v. Walters*, see note 25, supra at ¶ 5.

28. Second Amended Petition of Tuffy's Inc. and Ellen Cunningham, January 10, 2008, Record, § 9, p. 3 provides in pertinent part:

   ... Defendants breached their duty to exercise reasonable care in the enforcement of State and Municipal law, causing significant financial injury, emotional distress and other damages to Plaintiff and are therefore liable for such damages....

29. *Fehring v. State Ins. Fund*, see note 22, supra at ¶¶ 23–25 (injured worker may not bring a claim against a political subdivision on a theory of a breach of the implied duty of good faith and fair dealing because bad faith is a necessary element of the tort); *Nail v. City of Henryetta*, see note 15, supra at ¶ 9 (litigant may not bring a claim against a political subdivision if bad faith is a necessary element of the tort); *Parker v. City of Midwest City*, 1993 OK 29, ¶¶ 12–14, 850 P.2d 1065 (plaintiff cannot recover from a political subdivision on a theory of malicious prosecution because malice and lack of probable cause are elements of the tort, and these two elements inherently involve some degree of bad faith). The City has not argued that the appellants' negligence claim is barred because its elements require a showing of bad faith.

ployment.[30] We must determine whether the elements of tortious interference with a business relationship necessarily involve some degree of bad faith.

¶ 14 One has the right to prosecute a lawful business without unlawful molestation or unjustified interference from any person, and any malicious interference with that business is an unlawful act and an actionable wrong.[31] The elements of a claim for malicious interference are: 1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference.[32] The element of malice, for malicious interference, is defined as an unreasonable and wrongful act done intentionally, without just cause or excuse.[33] This element clearly requires a showing of bad faith. Because the element of malicious and wrongful interference necessarily involves some degree of bad faith, a political subdivision is not liable for malicious interference with a business relationship committed by its employees because bad faith actions are specifically excluded from the GTCA's definition of the scope of employment.

¶ 15 The appellants argue that they are not bringing a claim of malicious interference, but instead a claim of tortious interference, which they cast as a tort that requires no showing of bad faith on the part of the tortfeasor. The appellants rely on Instruction 24.1, Oklahoma Uniform Jury Instruction–Civil, which provides the elements of "Interference with Contract or Business Relationship." [34] This instruction, which calls the tort "intentional interference," requires a showing of intentional action using unfair or improper means. These elements contain some degree of bad faith on the part of the tortfeasor. The terms "malicious interference," "intentional interference," and "tortious interference" with contract or business relations have been used interchangeably in Oklahoma jurisprudence, and do not designate distinct torts, as urged by the appellants.[35] The trial court did not err by

**30.** Title 51 O.S. Supp.2008 § 152(11), see note 5, supra. See *Pellegrino v. State ex rel. Cameron Univ.*, see note 16, supra at ¶ 4; *Martin v. Johnson*, see note 23, supra.

**31.** *Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, ¶ 49 fn. 96, 958 P.2d 128; *Brock v. Thompson,* 1997 OK 127, ¶ 32 fn. 58, 948 P.2d 279; *Crystal Gas Co. v. Oklahoma Natural Gas Co.,* 1974 OK 34, ¶ 14, 529 P.2d 987.

**32.** *Daniels v. Union Baptist Ass'n,* 2001 OK 63, ¶ 13, 55 P.3d 1012; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 21, 932 P.2d 1091; *Voiles v. Santa Fe Minerals Inc.,* 1996 OK 13, ¶ 18 fn. 6, 911 P.2d 1205; *Morrow Dev. Corp. v. American Bank & Trust Co.,* 1994 OK 26, ¶ 10, 875 P.2d 411; *James Energy Co. v. HCG Energy Corp.,* 1992 OK 117, ¶ 29, 847 P.2d 333; *Waggoner v. Town & Country Mobile Homes, Inc.,* 1990 OK 139, ¶ 27, 808 P.2d 649; *Mac Adjustment, Inc. v. Property Loss Research Bureau,* 1979 OK 41, ¶ 5, 595 P.2d 427.

**33.** *Morrow Dev. Corp. v. American Bank & Trust Co.,* see note 32, supra; *Waggoner v. Town & Country Mobile Homes, Inc.,* see note 32, supra at ¶ 28; *Schonwald v. Ragains,* 1912 OK 210, ¶ 0, 122 P. 203.

**34.** The note to Oklahoma Uniform Jury Instruction–Civil, OUJI–Civil 24.1 provides that the term "business relationship" may be substituted for the word "contract" throughout to adapt for a claim of interference with a business relationship. OUJI–Civil 24.1 provides:

[Plaintiff] claims that [he/she/it] had a contract with [Third Party] in which they had agreed to [Describe the terms of the contract]. [Plaintiff] also claims that [Defendant] intentionally and wrongfully interfered with this contract, and that [he/she/it] suffered damages as a direct result. In order to win on the claim of intentional interference with a contract, [Plaintiff] must show by the weight of the evidence that:
1. [Plaintiff] had a contract with [Third Party];
2. [Defendant] knew [or under the circumstances reasonably should have known] about the contract;
3. [Defendant] interfered with the contract [or induced the Third Party to breach the contract, or made it impossible for the contract to be performed];
4. [Defendant]'s actions were intentional;
5. [Defendant] used improper or unfair means; and
6. [Plaintiff] suffered damages as a direct result of [Defendant]'s actions.

**35.** See *Gaylord Entertainment Co. v. Thompson,* see note 31, supra at ¶¶ 48–49; *Voiles v. Santa Fe Minerals Inc.,* see note 32, supra; *Morrow Dev. Corp. v. American Bank & Trust Co.,* see note 32, supra; *James Energy Co. v. HCG Energy Corp.,* see note 32, supra; *Niemeyer v. United States Fidelity & Guar. Co.,* 1990 OK 32, ¶ 4, 789 P.2d

dismissing the appellants' claim for tortious interference with a business relationship because the tort requires a showing of bad faith and thus cannot be committed within the scope of employment by an employee of a political subdivision.

## C.

### A Municipality's Immunity from Claims Resulting Its Employees' Enforcement of the Law Does Not Extend to Tortious Actions Committed Within the Scope of Employment.

¶ 16 The City addresses the appellants' negligence claim by arguing that, under the GTCA, it is not liable for any allegedly negligent acts committed by its officers because the acts were committed while the employees were in the midst of enforcing the law. The appellants respond that a litigant can maintain a negligence claim against a municipality based on the actions of a police officer who was acting within the scope of employment. Section 155(4) of the GTCA provides that a political subdivision is not liable for claims resulting from enforcement of a law.[36] In construing the scope of § 155(4), two prior cases on the question of whether a municipality is immune from claims arising from the acts of a police officer are instructive.

¶ 17 In *Nail v. City of Henryetta*, 1996 OK 12, ¶ 3, 911 P.2d 914, a police officer pushed a handcuffed boy to the ground, resulting in a broken nose, cuts, and bruises. The boy's mother sued the City of Henrietta on the theory that the officer either maliciously or negligently injured the boy by using excessive force. The trial court granted summary

judgment to the boy's mother on the issue of liability, but the Court of Civil Appeals reversed and remanded. On certiorari, we held that a municipality is not immunized from liability for the negligent acts of its employee committed within the scope of employment.[37] We observed that it is usually not within the scope of employment to commit an assault on a third person.[38]

¶ 18 However, this general rule does not apply when the act is one which is fairly and naturally incident to the business and is done while the employee is doing employer's business.[39] An employee's act is also within the scope of employment if it is done, however ill-advisedly, with a view to further the employer's interest or arises out of an emotional response to actions being taken for the employer.[40] We made no mention of § 155(4) immunizing the municipality simply because the officer was engaged in law enforcement at the time of the incident. We held that arresting the boy was clearly within the scope of employment, but that it was a jury question whether the officer's actions later went beyond the scope of his employment.

¶ 19 In *Decorte v. Robinson*, 1998 OK 87, ¶¶ 2–5, 969 P.2d 358, the issue was whether an off-duty police officer employed by the City of Broken Arrow (Broken Arrow) was acting within the scope of his employment by arresting a man and allegedly striking the man after handcuffing him. A jury returned a verdict against both Broken Arrow and the police officer. Broken Arrow argued that the verdict was irreconcilably inconsistent and unsupported by competent evidence.

1318; *Taxicab Drivers' Local Union No. 889 v. Pittman*, 1957 OK 259, ¶¶ 0, 25, 322 P.2d 159; *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir.2007); *Champagne Metals v. Ken–Mac Metals, Inc.*, 458 F.3d 1073, 1093 (10th Cir.2006); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 335 F.3d 1161, 1164 (10th Cir.2003); *Dill v. City of Edmond*, 155 F.3d 1193, 1207–1208 (10th Cir.1998); *Cohlmia v. Ardent Health Servs., L.L.C.*, 448 F.Supp.2d 1253, 1268 (N.D.Okla. 2006); *Tatum v. Philip Morris Inc.*, 809 F.Supp. 1452, 1468 (W.D.Okla.1992).

36. Title 51 O.S. Supp.2004 § 155(4), see note 7, supra.

37. *Nail v. City of Henryetta*, see note 15, supra at ¶¶ 9, 12–13.

38. *Baker v. Saint Francis Hosp.*, 2005 OK 36, ¶ 10, 126 P.3d 602; *Nail v. City of Henryetta*, see note 15, supra at ¶ 11; *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 12, 867 P.2d 1241.

39. *Bierman v. Aramark Refreshment Servs.*, 2008 OK 29, ¶ 14 fn. 18, 198 P.3d 877; *Nail v. City of Henryetta*, see note 15, supra at ¶ 11; *Rodebush v. Oklahoma Nursing Homes, Ltd.*, see note 38, supra.

40. *N.H. v. Presbyterian Church (U.S.A.)*, 1999 OK 88, ¶ 14, 998 P.2d 592; *Nail v. City of Henryetta*, see note 15, supra at ¶ 11; *Rodebush v. Oklahoma Nursing Homes, Ltd.*, see note 38, supra.

We affirmed the verdict and explained that liability exists for acts that can be described as abuses of lawful power by officers. We held that an employing political subdivision is immune as a matter of law only if an officer's acts are so extreme as to constitute a clearly unlawful usurpation of authority the officer does not rightfully possess. An officer's illegal misconduct may be accomplished through an abuse of power lawfully vested in the officer, instead of by an unlawful usurpation of power the officer did not rightfully possess.[41] We determined that the jury had factual support to determine that the officer's actions were initially within the scope of employment, but at some point, exceeded that scope. Again, we made no mention of § 155(4) immunizing Broken Arrow because the officer was engaged in law enforcement at the time of the incident.

¶ 20 To construe § 155(4) as providing blanket immunity to political subdivisions for any claim arising from law enforcement would not conform to established precedent. We have consistently held that a municipality is liable for the tortious acts of police officers committed within the scope of employment as defined by the GTCA. Such tortious acts include abuses of lawful power by police officers. Whether a police officer's actions were taken within the scope of employment is a jury question unless only one reasonable conclusion can be drawn from the facts alleged. In the instant cause, it is a jury question concerning whether the police officers were negligent when removing customers from the nightclub and, if so, whether the officers were acting within the scope of their employment.

¶ 21 In order to state a claim for negligence, a litigant must show the existence of a duty on the part of the defendant to protect plaintiff from injury, a breach of the duty, and an injury to plaintiff proximately resulting from the breach.[42] If by evi-

dence presented at trial, the appellants' allegations are found to be supported by the facts, the appellants could show that the police officers breached a duty by negligently removing customers from the nightclub, which was the proximate cause of financial injury to the appellants' business. Because the appellants stated a claim for which relief is legally possible, their petition was sufficient to survive a motion to dismiss. The trial court erred by dismissing the appellants' negligence claim.

### CONCLUSION

¶ 22 Because they are alleging financial injury to their business, the appellants have standing to bring this action. However, because the elements of tortious interference with a business relationship require a showing of bad faith, the City is immunized from such a tort claim because bad faith action is explicitly excluded from the GTCA's definition of the scope of employment. The trial court did not err by dismissing the appellants' claim for tortious interference with a business relationship. The City is not immunized from a negligence claim based on its officers' actions in the midst of law enforcement if the tortious acts were committed within the scope of employment. The trial court erred by dismissing the action for failure to state a claim upon which relief might possibly be granted. The trial court's dismissal is reversed, and the cause is remanded for proceedings consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND CAUSE REMANDED.**

EDMONDSON, C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, COLBERT, and REIF, J.J., concur.

TAYLOR, V.C.J., WATT, J., dissent.

NEGLIGENCE—ELEMENTS OF LIABILITY
A party claiming damages has the burden of proving each of the following propositions:
First, that [he/she] has sustained injury;
Second, that the party from whom [he/she] seeks to recover was negligent;
And, third, that such negligence was a direct cause of the injury sustained by the claiming party.

41. *Decorte v. Robinson*, see note 18, supra at ¶¶ 12–14, *citing McGhee v. Volusia County*, 679 So.2d 729, 733 (Fla.1996).

42. *See Scott v. Archon Group, L.P.*, 2008 OK 45, ¶ 17, 191 P.3d 1207; *Phelps v. Hotel Mgmt. Inc.*, 1996 OK 114, ¶ 6, 925 P.2d 891; *Thompson v. Presbyterian Hosp.*, 1982 OK 87, ¶ 7, 652 P.2d 260. Instruction 9.1, Oklahoma Uniform Jury Instructions–Civil provides: