Sylvia OCHOA, a minor, by Freda Hughes, her Guardian and Next Friend, and Freda Hughes, an individual, Appellants,

v.

Matthew Steven TAYLOR, an individual; City of Oklahoma City, State of Oklahoma; City of Bethany, State of Oklahoma; Putnam City School District, Oklahoma City, Oklahoma; and Bethany School District, Bethany, Oklahoma, Appellees.

No. 53877.

Supreme Court of Oklahoma.

Oct. 13, 1981.

---

Ellis & Frates by Kent F. Frates, Oklahoma City, for appellants.

Walter M. Powell, Municipal Counselor by Lawrence E. Naifeh, Lynn R. Hyatt, Asst. Municipal Counselors, Oklahoma City, for appellee, The City of Oklahoma City.

R. D. Looney, Sr., of Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee, City of Bethany, Okl.

Edwin F. Garrison, of Looney, Nichols, Johnson & Hayes, Oklahoma City, for appellee, Putnam City School Dist.

Ronald L. Day, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee, Bethany School Dist.

BARNES, Vice Chief Justice:

On September 7, 1978, Sylvia Ochoa left the Bethany High School Stadium after a football game. While attempting to cross Northwest 50th Street directly north of the stadium, she was struck by an automobile driven by Matthew Taylor. The Taylor automobile was exceeding the speed limit and was left of the center line.

On March 5, 1979, Ochoa filed suit against the driver, the City of Bethany, the Bethany School District, the Putnam City School District, and the City of Oklahoma City. The defendants, the Cities and School Districts, are involved because of their connection with the sporting event that Ochoa attended. The City of Bethany owns the stadium. The Bethany School District leases the stadium from the City. The Putnam School District had subleased the stadium from the Bethany Schools. The center line of Northwest 50th Street is the boundary between the City of Oklahoma City and the City of Bethany. Said center line is Oklahoma City's southern boundary and it is Bethany's northern boundary. Ochoa alleged that the Cities and School Districts were negligent because of their failure, at the accident location, to install and maintain traffic control measures or devices, to provide adequate patrol or guard service to properly control the students, other spectators, pedestrian and auto traffic, and to install and maintain street and area lighting.

The Cities and School Districts filed demurrers. The District Court sustained the demurrers and dismissed the actions against the Cities and School Districts. The District Court gave three reasons for its action: First, the Cities and School Districts did not owe a duty to Ochoa. Second, the Cities' and School Districts' actions could not be the proximate cause of Ochoa's injuries. Third, the Cities and School Districts are immune from suit under the provisions of the Political Subdivision Tort Claims Act, 51 O.S.Supp.1979, § 151 et seq.

Appellants appealed the trial court's granting of the demurrers on behalf of the Cities and School Districts. Matthew Steven Taylor, the other defendant in the case below, is not a party to this appeal.

In any negligence action, the first item that a plaintiff must establish is that the defendant owed a duty to the plaintiffs to protect them from the alleged injury. *Haas v. Firestone Tire & Rubber Co., 563 P.2d 620 (Okl.1977),* held that the determination of a defendant's duty is the threshold question of a suit involving claims of negligence. Appellants, in the immediate case, must establish that the Cities and/or School Systems had a duty to provide some protection against the actions of a driver on a street adjacent to the stadium property.

Appellants failed to cite any direct authority for such a finding.[1] We have examined cases prior to the Political Subdivision Tort Claims Act to determine whether Appellees have a common law duty to provide such protection.

■ The maintenance of streets is a proprietary function of cities and thus it is the duty of cities to exercise ordinary care and diligence to keep their sidewalks and streets in a reasonably safe condition and free of defects and obstructions thereon.[2] However, there is no legally enforceable duty upon a city to regulate and control traffic or to provide police protection.[3] With regard to the duty of a city to install and maintain street and area lighting, other jurisdictions have held that a city has no duty to light its streets, and its decision regarding the lighting of streets is left to the discretion of the governing body.[4]

Pursuant to statute, a municipality "may . . . regulate and control the use of streets." 11 O.S. § 36–101(1). By the wording of the statute itself, the municipality's power to regulate and control streets is discretionary. Therefore, not only is there no common law duty to provide such traffic control measures, there is no statutory duty to so provide.

■ All of the above authority pertaining to statutory or common law pertain only to cities, and not school districts. The powers and duties of school districts in Oklahoma are established by statute, 70 O.S. § 5–117, and do not include the installation and maintenance of lighting, traffic control measures or devices, or police protection on public streets. We find no authority for the imposition of such a duty on the part of school districts on property neither owned nor leased by such school districts, i. e., the center of a public street.

■ We therefore hold, on the basis of the above authority, that the Cities and School Districts owed no common law or statutory duty to install and maintain street lighting, traffic devices, patrol service, and traffic control at the accident location.

We now turn to the question of whether the Cities and School Districts would be further exempt from liability by virtue of the provisions of the Political Subdivision Tort Claims Act, 51 O.S.Supp.1979, § 151 et seq., (hereinafter referred to as the Act). The Act would hold a political subdivision[5] liable for its torts or the torts of its employees acting within the scope of their employment, but subject to the limitations specified within the Act itself.[6] The Act, by its terms, specifically limits that to which a political subdivision may be held liable, stating that, "(A) Political subdivision or any employee acting within the scope of his employment shall not be liable if a loss results from. . ." any one of twenty enumerated exemptions.[7] One such exception[8]

1. Appellants cite *Schlender v. Jansen, 380 P.2d 523 (Okl.1962)*, in an attempt to establish the Appellees' duty. This case stands for the proposition that if a duty is placed on the tenant, then the duty will also be imposed on the landlord. This proposition is not relevant to the case at bar because it does not address the threshold question of whether or not there is a duty at all. The above comment also applies to the cited cases of *Tulsa Entertainment Co. v. Greenlees, 85 Okl. 113, 205 P. 179 (1922)*, and *Moores v. Rumsey, 169 Okl. 103, 36 P.2d 15 (1934)*.

2. *Haas v. Firestone Tire & Rubber Co., 563 P.2d 620 (Okl.1977); Lane v. City of Tulsa, 402 P.2d 908 (Okl.1965); Williams v. City of Bristow, 350 P.2d 484, 84 A.L.R.2d 501 (Okl.1960)*.

3. *Young v. Chicago, Rock Island & Pac. Ry. Co., 541 P.2d 191 (Okl.1975); Kirk v. City of Muskogee, 183 Okl. 536, 83 P.2d 594 (1938)*.

4. *19 McQuillin Mun. Corp. (3d Ed.) Section 54.101 at 281–282; Weckslar v. City of Philadelphia, 178 Pa.Super. 496, 115 A.2d 898 (1955); Belt v. City of Grand Forks, 68 N.W.2d 114 (N.D.1955)*.

5. Section 152.6 of the Act defines a political subdivision as: "Political subdivision" means either an incorporated city or town, a school district or a county, and all of their institutions, instrumentalities or agencies. Thus, Appellees are political subdivisions within the meaning of the Act.

6. Title 51 O.S.Supp.1979, § 153.

7. Title 51 O.S.Supp.1979, § 155 (1 through 20).

provides that a political subdivision may not be held liable for the failure to install traffic control devices when such failure is the result of a "discretionary act" of the political subdivision. This Court has already stated that "police and traffic regulations of such a nature (installation and maintenance of a traffic sign) are purely discretionary governmental functions." *Kirk v. City of Muskogee, supra, at 597*. This classification was further upheld by this Court in *Young, supra, at 195*.

■ It is therefore clear that Appellants' allegations of failure to install and maintain traffic control devices and failure to provide patrol and guard service to control pedestrians, students and auto traffic are allegations of negligence in the performance of their failure to perform a discretionary function.[9] The Act specifically exempts political subdivisions from liability in the failure to exercise discretionary functions.[10]

Appellants' allegation of failure to provide patrol and guard service fails to state a cause of action because it relates to the absence, condition or malfunction of traffic control devices, 51 O.S.Supp.1979, § 155(15); and to the discretionary function of traffic control, 51 O.S.Supp.1979, § 155(5). It also fails to state a cause of action because a political subdivision is not liable for a loss resulting from the failure to provide or method of providing police protection.[11]

The rationale for exempting political subdivision from losses resulting from the failure to provide or the method of providing police protection is quite clear. It is stated by this Court in *Kirk v. City of Muskogee, supra, at 597*:

"... To hold the defendant liable ... would be to say, in effect, that a municipality is subject to liability whenever it fails to furnish a citizen the police protection necessary to save him from injury arising out of various and sundry traffic hazards."

The ramifications of any other holding would be a tremendous burden on a political subdivision. A political subdivision would be held liable any time a person was injured in a traffic accident by merely alleging, as Appellants have, that the political subdivision failed to provide traffic control devices or police protection and regulation sufficient enough to prevent the injury. The Legislature prevented the imposition of this burden by exempting the municipality from liability based on such allegations. 51 O.S. Supp.1979, § 155(5), (6), (15).

■ Lastly, we hold that the installation and maintenance of street or area lighting is a discretionary act or service of a political subdivision and therefore exempt from liability under 51 O.S.Supp.1979, § 155(5). *McQuillin, supra, at 281–282*, indicates that "the question whether the street shall be

---

**8.** Title 51 O.S.Supp.1979, § 155(15), provides:

"Absence, condition or malfunction of any traffic or road sign, signal or warning device unless the absence, condition or malfunction is not corrected by the political subdivision responsible within a reasonable time after actual or constructive notice or the removal or destruction of such signs, signals or warning devices by third parties except on failure of the political subdivision to correct the same within a reasonable time after actual or constructive notice. Nothing herein shall give rise to liability arising from the failure of any political subdivision to initially place any of the above signs, signals or warning devices when such failure is the result of a discretionary act of the political subdivision. The signs, signals and warning devices referred to herein are those used in connection with the hazards normally connected with the use of roadways or public ways and do not apply to the duty to warn of

special defects such as excavations or roadway obstructions; ..."

**9.** In another jurisdiction, a court held that the decision to assign and the number of officers to be assigned to regulate traffic at a given intersection is a discretionary decision to be left to the governing body. *Ferrier v. City of White Plains, 262 App.Div. 94, 28 N.Y.S.2d 218 (1941)*.

**10.** Title 51 O.S.Supp.1979, § 155(5), provides:

"Performance with a failure to exercise or perform any act or service which is in the discretion of the political subdivision or its employee;".

**11.** Title 51 O.S.Supp.1979, § 155(6), provides:

"Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police or fire protection;".

lighted is left to the discretion of the municipality".

Lastly, Appellants allege that the trial court erred in sustaining the Cities' and School Districts' demurrers on the grounds that the Cities' and School Districts' failure to provide traffic control measures did not proximately cause or contribute to Appellant's injuries. When all pleaded facts failed to show a causal connection between the acts of negligence alleged and the resultant injury, then the issue of proximate cause or causal connection is a question of law for the trial court.[12]

Under the facts alleged in the petition, the proximate cause of Ochoa's injury was reckless driving of the motorist, an independent act of a third party, and not the acts of the Cities and School Districts in failing to provide traffic control measures.

The order of the trial court sustaining the demurrers to the petition is affirmed.

AFFIRMED.

IRWIN, C. J., and LAVENDER, SIMMS and HARGRAVE, JJ., concur.

OPALA, J., concurs by reason of stare decisis.

Sam H. Johnson, Rhoads & Johnson, Lawton, for appellant.

Eddie Y. Newcombe, Newcombe & Redman, Lawton, for appellee.

12. *Williams v. City of Bristow*, 350 P.2d 484 (Okl.1960).