HARWOOD v. ARDAGH GROUP
2022 OK 51
Case Number: 118947
Decided: 06/01/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 51, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

JERRY NEAL HARWOOD, Plaintiff/Appellant,
v.
ARDAGH GROUP, ARDAGH GLASS, INC., Defendant/Appellee,
and
PATRICK THOM MCLAUGHLAN, Defendant.

ON CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I

Honorable Douglas W. Golden, Trial Judge

¶0 An automobile driven by the defendant, Patrick McLaughlan, struck Jerry Harwood while Harwood was leaving his work shift and crossing the street to an employer provided parking lot. After an unsuccessful attempt to recover workers compensation benefits for his injuries, Harwood filed a lawsuit against the driver and his employer. The trial court dismissed the lawsuit against the employer for failure to state a claim upon which relief could be granted. Harwood appealed, and the Court of Civil Appeals affirmed. We hold that because an employer may have assumed the duty to provide a safer crosswalk for access to an employer designated parking lot, the employee has pled a claim for relief which is legally possible. The trial court's dismissal was premature.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND CAUSE REMANDED. 

John L. Harlan, Sapulpa, Oklahoma, for Plaintiff/Appellant.

Drew A. Lagow, Rhiannon K. Baker, Edmond, Oklahoma, for Defendant/Appellee.

KAUGER, J.:

¶1 We granted certiorari to address the dispositive issue of whether the employee pled a claim for relief because the employer may owe a duty to provide a safer crosswalk for employees parking in the employer designated parking lot and accessing the place of employment by using the crosswalk. We hold that because the employer may have assumed the duty to provide a safer crosswalk for access to an employer designated parking lot, the employee has pled a claim for relief which is legally possible.

ALLEGED FACTS

¶2 The defendant, Ardagh (Ardagh/employer), employed the plaintiff, Jerry Neal Harwood, (Harwood/employee) at its glass plant in Sapulpa, Oklahoma.

¶3 The crosswalk was covered by overhead stop lights which were activated by the employees from either end of the crosswalk. At night, street lights also lined both sides of the street at and near the marked crosswalk. Although the employer did not own, operate, or control the crosswalks, according to the employee, Ardagh knew that:

1) the stop lights and street lights were inoperable 2 or 3 times a year;

2) on the afternoon of July 14, 2016, the lights were inoperable until July 17, 2016;

3) following a power outage on July 14, 2016, the City of Sapulpa placed a four-way metal stop sign in the center of the intersection adjacent to the marked crosswalk;

4) local City of Sapulpa police were occasionally, but not always, present during shift changes when employees were crossing in the crosswalk; and

5) some motor vehicles did not stop for the crosswalk and/or metal four way stop sign.

¶4 On the night of July 16, 2016, while the stop lights and street lights were

not working, a motor vehicle, driven by the defendant, Patrick Thom McLaughlan (McLaughlan), hit Harwood while he was leaving his 11:00 p.m. shift. The employee suffered severe injuries, rendering him permanently and totally disabled for the rest of his life, and unable to work again.

¶5 The employee first sought workers compensation benefits from the employer which were denied because the accident occurred after the employee had "clocked out" and left work. Consequently, the injuries did not arise out of the course of employment and thus were not covered by workers' compensation benefits. The denial of workers compensation benefits is not before us in this cause, and the matter has been concluded. 

 

¶6 On February 8, 2019, the employee filed a lawsuit against Ardagh and the driver who hit him in the District Court of Creek County, Oklahoma. The employee alleged that the driver caused the employee's injuries when he negligently failed to stop at the crosswalk. He also alleged that the employer was a cause of his injuries because the employer negligently failed to ensure adequate lighting and protection for employees crossing the crosswalk.

 

¶7 On March 5, 2019, the employer filed a Motion to Dismiss for failure to state a claim upon which relief could be granted. It argued that because it did not own, operate or control the crosswalk, and the employee was not within the course and scope of employment at the time of the accident, Ardagh did not have a duty to make the crosswalk safer. Accordingly, because no duty existed, the employer could not be determined to have been negligent as matter of law, and the employee failed to state a claim upon which relief could be granted.

¶8 On April 8, 2019, the trial court agreed with the employer, and granted the employer's Motion to Dismiss for failure to state a claim upon which relief may be granted. However, the trial court also allowed the employee the opportunity to file an amended petition, which the employee did on April 29, 2019.

¶9 In the amended petition, the employee added additional allegations that the employer:

1) instead of providing parking for hourly employees adjacent to the plant, like they did with management, the employer provided hourly employees with two parking lots across a four lane street which it either leased or owned and were surrounded by a chain link fence;

2) the employer instructed the hourly employees to park in the lots and they were forbidden from parking adjacent to the plant;

3) the four lane street was also a four lane state highway and was the most direct route from Sapulpa to Tulsa, thereby making it heavily traveled and a hazard;

4) the transit between the plant and the parking lots was the marked crosswalk;

5) employees were told using the crosswalk was "part of your job" and that it was "the most dangerous part of your job" even if the employees were not "on the clock yet."

6) employees were issued reprimands if they did not use the crosswalk;

7) only plant employees used the crosswalk, as there were no other businesses or homes near it;

8) the employer created a walkway, "cattle chute," in the chainlink fence to the marked crosswalk and another walkway with railings leading from the crosswalk to the plant;

9) even if the street was a public street, the employer's use of the crosswalk was de facto part of its property and constituted a constructive use or occupancy of it;

10) the night before the employee was injured a supervisor placed a set of strobe lights on the four way, temporary, metal stop sign, but took it off at the shift change;

11) the plant manager assisted, and approved of, employees placing another set of strobe lights on the four way stop within two and a half hours after the employee's accident; and

12) the employer represented to employees that it would make the passage across the crosswalk as safe as possible.

¶10 On June 7, 2019, the employer filed a second Motion to Dismiss for failure to state a claim upon which relief could be granted. On September 9, 2019, the employer filed a additional Motion to Dismiss, arguing that because the employee's negligence claims arose out of an employment relationship between the employee and the employer, the employee's remedy was limited to the workers' compensation commission.

¶11 On June 29, 2020, the trial court filed an order dismissing the employer from the lawsuit because the employee failed to state a claim upon which relief could be granted. The court also found that there was no just reason to delay the entry of a final judgment as to the employer.

BECAUSE THE EMPLOYER MAY HAVE ASSUMED THE DUTY TO 
PROVIDE A SAFER CROSSWALK FOR ACCESS TO AN EMPLOYER
DESIGNATED PARKING LOT, THE EMPLOYEE PLED A CLAIM FOR 
WHICH RELIEF IS LEGALLY POSSIBLE. THE TRIAL COURT'S 
DISMISSAL WAS PREMATURE.

¶12 The employer argues that because it does not own or control the crosswalk, it had no duty as a matter of law to make the crosswalk any safer. It insists that the employee's only remedy against the employer is through workers' compensation proceedings which have already been pursued. The employee contends that, irrespective of whether the employee was entitled to workers' compensation benefits, the employer assumed the duty to make the crosswalk safer on the day of the accident, but that duty was breached and a cause of the accident.

A.
Standard of Review/Motion to Dismiss for Failure to State a Claim.

¶13 The trial court dismissed the cause pursuant to the employer's motion to dismiss for the employee's failure to state a claim for negligence against it.

¶14 An order dismissing a case for failure to state a claim upon which relief can be granted is subject to de novo review.

 

¶15 A pleading must not be dismissed for failure to state a legally cognizable claim unless the allegations indicate beyond any doubt that the litigant can prove no set of facts which would entitle the plaintiff to relief.

 

B. 
The Employer/Employee Relationship Status as it Relates to Premises 
Liability and/or Workers' Compensation Benefits.

¶16 This cause does not concern the award or denial of Workers' Compensation Benefits. The Workers' Compensation coverage issue has already been decided, and the court determined that because the employee had "clocked out" when he was injured in the crosswalk while crossing the highway, he was not injured "in the course of employment" it must deny coverage.

¶17 However, the most current Workers' Compensation regime, 85 O.S. Supp. 2021 §2

 

¶18 Although the statute was subsequently amended in 2018, 2019, and 2021, the only change made by the legislature, pertinent to our discussion of this cause, was the addition of the clarification language of "unless the employer owns or maintains exclusive control over the area" added in 2021. Prior to this 2021 change, cases generally involved questions such as whether the alleged injury occurred in a parking lot on the employer premises, or close or nearby the employer's premises under the employer's control, coupled with the question of whether the employee was engaged in activity in the furtherance of the employer's business while arriving or leaving the workplace, or on a break.

 

¶19 One such example of that analysis, with a fact pattern very similar to this cause, is Swanson v. General Paint Co., 1961 OK 70361 P.2d 842Swanson, supra, had parked his car in a employer provided parking lot and, while walking across the Sand Springs Highway, he was struck by an automobile and killed.

 

¶20 The parking lot was not owned by the employer. Rather the building and grounds of the employer's plant were rented. The landlord furnished the parking lot for the convenience of several tenants and their employees for joint use. The employee, with the consent and acquiescence of the officials of the paint company, parked in the lot and, at one time, the employee even had a marked space with his name on it. The accident occurred at approximately 7:53 a.m. on November 19, 1958, and the employee's hours were from 7:45 a.m. to 4:15 p.m.

¶21 To decide whether the employee was covered by Workers' Compensation death benefits, the Court looked at whether the employee was killed on the employer's premises because the rule at the time was that where a parking lot constituted a part of an employer's premises, an injury incurred in passing from such area to his working place was considered incurring out of and in the course of employment.

¶22 The Swanson Court , supra, held that the fact that the accident happened on a public road is not conclusive against the existence of a causal relationship, if the danger be one which the employee by reason of employment is subjected.Swanson, supra, involved questions of whether the employer owned or controlled the premises, and whether there was a causal connection between the injury and employment or that the precipitating risk of harm was created or maintained by the employer.Bober v. Oklahoma State University, 2016 OK 78378 P.3d 562

¶23 The dissent in Bober, supra, pointed out that the statutory changes reflect a clear line policy decision by the legislature to draw a line for employer liability under Workers' Compensation law that begins and ends with an employee clocking into and out of work, unless directed otherwise by the employer. It went on to say that:

¶3 Workers' Compensation is not an exclusive remedy if the statutes specifically eliminate parking lot injuries as coming within the "course and scope of employment." If there is actionable negligence for a parking lot injury, it is still covered by tort law. The Court's opinion holds that "A parking lot owned or controlled by the employer alone clearly constitutes the 'premises' of such employer, and is part of the 'employer's place of business." However, if the legislature has intentionally excluded the parking lot from the jurisdiction of Workers' Compensation law, the "premises" doctrine is no longer valid. The legislature has the authority and power to make such an exception. I conclude that it "clearly" made such an exception.

After Bober, was decided, the legislature, in 2021, clarified that injuries occurring before or after clocking out would be covered only when the premises were under the exclusive control of the employer.

 

¶24 Nevertheless, the dissent also noted that Workers' Compensation is not an exclusive remedy if the statutes specifically eliminate parking lot injuries as coming within the "course and scope of employment." If there is actionable negligence for a parking lot injury, or in this case a crosswalk injury, it is still covered by tort law. We agree that if there is an actionable claim for negligence in this cause, it is covered by tort law and may be brought in the district court and that denial of Workers' Compensation benefits because an employee was not "in the course" of employment does not preclude such a negligence action. This is the policy decision expressly chosen by the Legislature when it eliminated parking lot, and other similar, injuries from coming within the "course and scope of employment."

 

C.
A Duty May be Assumed, Supporting an Actionable Negligence Claim.

¶25 Review of dismissals of alleged negligence claims for the failure to maintain a safe crosswalk, or duty to provide a safe crosswalk, ordinarily come before us in the context of a Governmental Torts Claim,Teeter v. City of Edmond, 2004 OK 585 P.3d 817Teeter, supra, a student was struck by a motor vehicle and seriously injured while crossing a four-lane street maintained by the City of Edmond and which bordered the university.

¶26 Regarding university's alleged duty to maintain or make a crosswalk safer, we explained that the duty can arise when one voluntarily assumes a duty to provide a safer crosswalk. We said:

¶20 Teeter also contends that UCO assumed a duty to provide a safe crosswalk independent of the City's police power. Elements to a claim based upon negligence include (1) a duty to the plaintiff, (2) a violation of that duty, and (3) and injury resulting from that violation. Hesser v. Central National Bank & Trust Company of Enid, 1998 OK 15956 P.2d 864Jackson v. Mercy Health Center, Inc., 1993 OK 155864 P.2d 839Seavey, Reliance on Gratuitous Promises or Other Conduct, 64 Harv.L.Rev. 913, 928 (1951), ("Where a person represents by word or act that he has done or will do something upon the performance of which he should realize that others will rely, he is liable for expectable harm caused by the reliance of others and his failure of performance, if his representation was negligently or intentionally false, or if without excuse he fails to perform.").

Nevertheless, the Court concluded that even if the university undertook a duty to provide a crosswalk, the student's negligence claims were barred by the Governmental Tort Claims Act because the university was the "State" for purposes of the Act, and the Act provided that no negligence-based liability could arise from the failure to initially place road signs or warning signs to make a crosswalk safer.

 

¶27 In this cause, the employer is not an entity protected by the Governmental Tort Claims Act. The standards for attaching liability based upon one who voluntarily assumes a duty squarely apply. Among the traditional elements of the tort of negligence are that there must be: 1) a duty owed by one person to another; and 2) a breach of that duty.

 

¶28 Here, we are not talking about a duty owed to the general public by the employer. The word "duty' is used throughout the Restatement (Second) of Torts to denote the fact that an actor is required to conduct himself or herself in a particular manner at the risk that if he or she does not do so, liability may extend to another to whom the duty is owed for an injury sustained of which the actor's conduct is a legal cause.Teeter, supra, and that of the Restatement (Second) of Torts §323 (1965) which provides:

 

One who undertakes, gratuitously or for consideration, to render services to another which he (or she) should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his (or her) failure to exercise reasonable care to perform the undertaking if:

(a) his (or her) failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

¶29 The allegations are that the employer provided parking for employees and instructed them to park across a busy highway. The employer represented to employees that it would make the passage across the highway as safe as possible, and it recognized the necessity for the protection of the employees crossing to the parking lot by creating a walkway with railings, and placed strobe lights on the four-way stop when the crosswalk lights were out. The allegations in this cause are beyond those of merely promising an undertaking to make crossing safer. The allegations are that the employer previously had taken steps to make the crossing safer, the employees relied on the employer to make the crossing safe, and the employer failed to do so on this occasion which increased the risk of harm to the employee.

¶30 Taken in a light most favorable to the employee, and with all reasonable inferences in his favor, the employee's petition does state an extant duty on the employer to make the crosswalk safer.

 

CONCLUSION

 

¶31 Because we have held that the employer may have assumed the duty to provide a safer crosswalk for access to an employer designated parking lot, the employee has pled a case for relief which is legally possible. The courthouse doors are open to the employee. Whether or not the actions of the employer were the proximate cause of the injury to the appellant is one for the jury to decide.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS OPINION VACATED;
TRIAL COURT REVERSED AND CAUSE REMANDED. 

CONCUR: Darby, C.J., Kauger, Edmondson, Combs and Gurich, JJ.

DISSENT: Kane, V.C.J. (by separate writing), Winchester (by separate writing) Rowe and Kuehn, (by separate writing), JJ.

FOOTNOTES

Harwood v. Ardach Group, 2019 OK CIV APP 11435 P.3d 121

A. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk.

12 O.S. 2011 §2012

B. HOW PRESENTED. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .

6. Failure to state a claim upon which relief can be granted; . . .

Ho v. Tulsa Spine & Specialty Hoptial, L.L.C., 2021 OK 68Tuffy's Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158Gens v. Casady School, 2008 OK 5177 P.3d 565

Ho v. Tulsa Spine & Specialty Hoptial, L.L.C., see note 6, supra; Tuffy's Inc. v. City of Oklahoma City, see note 6, supra; Gens v. Casady School, see note 6, supra.

Ho v. Tulsa Spine & Specialty Hoptial, L.L.C., see note 6, supra; Tuffy's Inc. v. City of Oklahoma City, see note 6, supra; Gens v. Casady School, see note 6, supra.

Tuffy's Inc. v. City of Oklahoma City, see note , supra; Brown v. Founders Bank and Trust Co., 1994 OK 30890 P.2d 855

Ho v. Tulsa Spine & Specialty Hoptial, L.L.C., see note 6, supra; Brown v. Founders Bank and Trust Co., see note 8, supra.

Tuffy's Inc. v. City of Oklahoma City, see note 6, supra; Gens v. Casady School, see note 6, supra.

Tuffy's Inc. v. City of Oklahoma City, see note 6, supra; Gens v. Casady School, see note 6, supra.

Harwood v. Ardach Group, see note 3, supra.

85A O.S. 2021 §2

13. "Course and scope of employment" means an activity of any kind or character for which the employee was hired and that relates to and derives from the work, business, trade or profession of an employer, and is performed by an employee in the furtherance of the affairs or business of an employer. The term includes activities conducted on the premises of an employer or at other locations designated by an employer and travel by an employee in furtherance of the affairs of an employer that is specifically directed by the employer. This term does not include:

a. an employee's transportation to and from his or her place of employment,

b. travel by an employee in furtherance of the affairs of an employer if the travel is also in furtherance of personal or private affairs of the employee,

c. any injury occurring in a parking lot or other common area adjacent to an employer's place of business before the employee clocks in or otherwise begins work for the employer or after the employee clocks out or otherwise stops work for the employer unless the employer owns or maintains exclusive control over the area, or

d. any injury occurring while an employee is on a work break, unless the injury occurs while the employee is on a work break inside the employer's facility or in an area owned by or exclusively controlled by the employer and the work break is authorized by the employee's supervisor;

5. An injury which occurs outside the course of employment. Employment shall be deemed to commence when an employee arrives at the employee's place of employment to report for work and shall terminate when the employee leaves the employee's place of employment, excluding areas not under the control of the employer or areas where essential job functions are not performed; provided, however, when the employee is instructed by the employer to perform a work-related task away from the employee's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the performance of job duties directly related to the task as instructed by the employer, including travel time that is solely related and necessary to the employee's performance of the task. Travel by a policeman, fireman, or a member of a first aid or rescue squad, in responding to and returning from an emergency, shall be deemed to be in the course of employment.

This statute was enacted in 1915 and amended numerous times until it was repealed with the 2013 overhaul.

Johnson v. Midwest City Del City Public School, 2021 OK 29Pina v. American Piping Inspection, 2018 OK 40Brown v. Claims Management Resources, 2017 OK 13391 P.3d 111Bober v. Oklahoma State University, 2016 OK 78378 P.3d 562

Turner v. B Sew Inn, 2000 OK 9718 P.3d 1070Fudge v. University of Oklahoma, 1983 OK 67673 P.2d 149Thomas v. Keith Hensel Optical Labs, 1982 OK 120653 P.2d 201Belscot Family Center v. Sapcut, 1973 OK 41509 P.2d 905White v. Milk Producers, Inc., 1972 OK 48496 P.2d 1172Hedge v. Pittman, 1970 OK 91471 P.2d 888Walk v. S.C. Orbach Co., 1964 OK 114393 P.2d 847Carney v. Direct Group, Inc., 20014 OK CIV APP 4, 316 P.3d 234

51 O.S. 2011 §§151

51 O.S. §§151Ochoa v. Taylor, 1981 OK __, 635 P.2d 604Kirk v. City of Muskogee, 1938 OK __, 83 P.2d 594Robinson v. City of Bartlesville Bd. of Educ., 1985 OK 39700 P.2d 1013Walker v. City of Moore, 1992 OK 73837 P.2d 876

Hesser v. Central National Bank & Trust Co., of Enid, 1998 Ok 15956 P.2d 864Wofford v. Eastern State Hospital, 1990 OK 77795 P.2d 516Thompson v. Presbyterian Hospital, 1982 OK 87652 P.2d 260Robinson v. Oklahoma Nephrology Associates, Inc., 2007 OK 2154 P.3d 1250

Wofford v. Eastern State Hospital, see note 21, supra; Rose v. Sapulpa Rural Water Co., 1981 OK 85631 P.2d 752

Jackson v. Mercy Health Center, Inc., 1993 OK 155864 P.2d 839

Donavan v. Jones, 658 So.2d 755 (La.App. 2 Cir. 1995) [Employer owed duty to employee of independent contractor to exercise reasonable care for his safety and not expose him to unreasonable risks of injury or harm once it designated a parking lot across a major highway for contractor to park. Employer provide reasonably safe access to work premises and may have contributed substantially to the dangerous condition, regardless of the state's duty to maintain the highway. Chadwell v. Clements, 18 Kan. ApP.2d 84, 847 P.2d 1344 (1993) [Employer owed no duty to keep crosswalk safe merely because the county adopted some of the employer's suggestions to make crossing of public street safer for employees.].

Robinson v. Oklahoma Nephrology Associates, Inc., see note 20, supra; Johnson v. Hillcrest Health Center, Inc., 2003 OK 1670 P.3d 811

 

 

KANE, V.C.J., with whom Kuehn, J. joins, dissenting:

¶1 The Majority expands the concept of duty in premises liability cases by increasing potential liability to private employers and/or private business owners far beyond what our case law has provided for in the past. The Majority creates a new duty of care for the employer to provide safe passage to its employees on public streets, over which the employer has no ownership or control. Such a result creates unprecedented exposure for private business owners all across our State.

¶2 The Majority holds that "the employer may have assumed a duty to provide a safer crosswalk for access to an employer designated parking lot" and thus, "employee has pled a case for relief which is legally possible" via the filing of employee's Amended Petition. See Majority Op. ¶ 31 & n.1. However, a duty must rightfully exist in our law before it can be violated. In Craft v. Graebel--Oklahoma Movers, Inc., 2007 OK 79178 P.3d 170

To establish a prima facie case of negligence, a plaintiff must show: first, that the defendant had a duty to protect the plaintiff from injury; second, that the defendant failed to properly exercise or perform that duty, and third, that the defendant's failure to properly exercise or perform that duty caused the plaintiff's injury.

(emphasis added).

¶3 Taking all of the allegations of the employee together with all reasonable inferences which may be drawn from them as true when reviewing a motion to dismiss,

¶4 In footnote 1 of the Majority opinion, it is suggested that the facts may eventually establish that no duty existed, but this misses the point.See Craft, 2007 OK 79178 P.3d at 179Hesser v. Central Nat. Bank & Trust Co. of Enid, 1998 OK 15956 P.2d 864

¶5 Despite conceding ownership and control of the public street by the City in this case, the Majority seeks to impose a duty and/or allow the assumption of a duty upon a private employer and/or private business owner, who has no right, power, or authority to regulate the public street. This cannot be the end result and our prior precedent does not support this conclusion. It is the State who delegates police power to a city to regulate traffic on a public street and it is a power that a city cannot surrender. See Teeter v. City of Edmond, 2004 OK 585 P.3d 817White v. City of Lawton, 1961 OK 287373 P.2d 25

¶6 There is no dispute over who owned, operated, and/or controlled the public street -- it is the City. It is undisputed there was a power outage resulting in all of the public street lights to be out, as well as the public crosswalk lights to be out at the time of the accident. It is likewise undisputed that the City police were not present to assist and bring attention to the crosswalk during the employees' shift change, as they had done in the past. It is also undisputed the employer let the City know about the power outage, as was the employer's common practice.

¶7 After the power outage, the City placed a four-way metal stop sign in the center of the intersection. This was a decision made solely by the City, as the undisputed owner and operator of the public street. The Majority concedes this important fact and acknowledges that the majority of cases this Court has decided involving the duty to provide safe passage on a public street are in the context of claims under the Governmental Tort Claims Act (GTCA), 51 O.S.2021 ch. 5, §§ 151-172, wherein the public street is owned by the state entity -- like the City in this case. In those cases, we have held that allegations of failure to install or maintain traffic control devices, lighting, and providing patrol services are discretionary functions of the state entity and not actionable under the GTCA. See Majority Op. ¶ 26 n.20.

¶8 The fact that the employee was struck by a motorist at the crosswalk on a public street and sustained serious injuries is tragic; however, the employee is not left without a remedy at law. As the Majority lays out, the employee originally sought compensation from his employer in the Workers' Compensation Court. The Majority correctly points out that the case did not fall within the Administrative Workers' Compensation Act (Workers' Compensation Act), 85A O.S.2013 §§ 1et seq., because the employee had "clocked out" and was not injured "in the course of his employment." See Majority Op. ¶¶ 5 n.2, 16.

¶9 Despite reaching this conclusion, the Majority devotes a whole section to the "Employer/Employee Relationship Status as it Relates to Premises Liability and/or Workers' Compensation Benefits," which can be summed up as irrelevant to the facts of this case due to subsequent statutory amendments to our Workers' Compensation Act. See Majority Op. ¶¶ 16-24. Our current Workers' Compensation Act reflects a clear line policy decision by the legislature that employer liability begins and ends with an employee clocking into and out of work. See 85A O.S.2021 § 2

¶10 In this case, it is undisputed the employee was "clocked out" at the time of the accident. It is also undisputed that the public street the employee was crossing was solely owned, operated and/or maintained exclusively by the City. Thus, the relationship between the employee and the employer is irrelevant for purposes of our analysis here, other than noting prior versions of the Workers' Compensation Act may have resulted in a different outcome -- which matters not.

¶11 While the conditions at the crosswalk were allegedly problematic, they were no more under the control of the employer than they were of the employee. As a result, the employee's remedy for injuries sustained is one in negligence against the motorist who hit him as he crossed the public street using the crosswalk

FOOTNOTES

See Tuffy's Inc. v. City of Oklahoma City, 2009 OK 4212 P.3d 1158

The dissents in this case . . . treat this cause as though it stands for employer-based strict liability for employees . . . . This is not the case -- far from it . . . . This cause is before the court on a motion to dismiss, an under the ordinary negligence principles as outlined in this cause, the employer may have assumed a duty that may be a contributing factor to the employee's injuries -- at least to the extent that a dismissal is premature.

Majority Op. n.1.

 

 

Winchester, J., with whom Rowe, J., and Kuehn, J. join, dissenting:

¶1 My complaint with the majority is that it creates a duty for the employer to provide safe passage on a public street. There is no dispute over who owned, operated, or controlled the public street: the City of Sapulpa (City). The employer therefore owed no duty to the employee, and anything the employer did to help provide safe passage on the public street did not give rise to a duty of care.

¶2 The majority relies on Teeter v. City of Edmond, 2004 OK 585 P.3d 817Teeter Court specifically pointed out that the plaintiff had not provided any law to support the university's authority to control traffic on the public street adjacent to the university. Id. ¶ 19, 85 P.3d at 823. The Court further noted that despite the fact that the university requested that the city address the issue with the public street and then, with the city's approval, purchased and installed flashing pedestrian warning signs, the city did not delegate a duty to the university. Id. The Teeter Court clarified that the State delegates police power to a city to regulate traffic on a public street; a power that a city cannot surrender. Id. ¶ 18, 85 P.3d at 823.

¶3 We held similarly in Ochoa v. Taylor, 1981 OK 120635 P.2d 604 Id. ¶ 7, 635 P.2d at 607. The Court then addressed the high school's duty regarding public streets and found no authority for imposing such a duty on the part of the high school on property neither owned nor leased by the high school, i.e., the center of a public street. Id. ¶ 9, 635 P.2d at 607.

¶4 Here, it was within the discretion of the City to determine how to exercise its police power regarding what safety measures it would take for the crosswalk prior to and during the power outage. The crosswalk was covered by overhead stoplights placed and operated by the City. Street lights operated by the City lined both sides of the street. After the power outage, the employer contacted the City (which was customary), and the City placed a four-way metal stop sign in the center of the intersection. Police officers provided by the City were occasionally present during shift changes when employees were crossing in the crosswalk. These safety measures were all done by the City because it owned and controlled the public street.

¶6 The majority correctly points out that most cases this Court has decided involving the duty to provide safe passage on a public street are in the context of claims under the Oklahoma Governmental Tort Claims Act (GTCA), 51 O.S.2021, ch. 5, §§ 151-172, https://govt.westlaw.com/okjc. This point matters because a state entity like the City owns and controls the public street. The majority admits that in those cases, we have held that allegations of failure to install or maintain traffic control devices, provide patrol services, and light streets are discretionary functions of the state entity and not actionable under the GTCA. See Majority Op. ¶ 26 n.20. Yet today's pronouncement imposes a duty on private employers, and potentially private business owners, for such actions where the city, who owns and controls the public street, would be immune; this duty is too far-reaching.

¶7 The employer did not have a statutory or common law duty to assume the City's discretionary right to regulate and control the use of its streets. As a result, the employer had no duty to improve the safety measures taken by the City. To hold otherwise expands the duty of employers (and business owners) everywhere to ensure safe passage for employees (and all customers who use that business) on any public street adjacent to the employer's business. For this reason, I respectfully dissent.

 

 

KUEHN, J., DISSENTING:

¶1 The Majority concludes that, given Plaintiff's factual allegations, there is a legal avenue for holding Ardagh liable for negligence. The gist of Plaintiff's argument is that Ardagh broke its promise to make his crossing the street "as safe as possible." For the reasons below, I dissent.

¶2 The Majority correctly notes this case does not fall within the Worker's Compensation Act. And it correctly finds that the traditional standards for voluntarily assuming a duty -- a "gratuitous undertaking" -- still apply. Opinion at ¶ 27. But the Majority goes on to suggest some undefined, enhanced duty on Ardagh's part by virtue of its status as Plaintiff's employer. Opinion at ¶ 28. The Majority cites no authority to support this new standard of care. Plaintiff made the same argument on appeal; but as the COCA observed, even Plaintiff acknowledged that there are no Oklahoma cases supporting it.

¶3 Ardagh's liability, if any, is based on the concept of a "gratuitous undertaking," discussed in Section 323 of the Restatement (Second) of Torts, which this Court has adopted in several cases. See Teeter v. City of Edmond, 2004 OK 585 P.3d 817why one undertook certain measures, or why the other relied on those measures. But there is no extra legal duty simply by virtue of the fact that Plaintiff was employed by Ardagh.

¶4 Under Section 323, a gratuitous undertaking to render services for the protection of another can result in liability if the provider does not use reasonable care, and (a) thereby increases the risk of harm, or (b) harm results from another's reliance on the provider's undertaking. Plaintiff's own facts -- which we take as true at this stage of the litigation -- demonstrate that he meets neither of these alternative conditions.

¶5 Ardagh does not deny it took pains to get its employees safely from the factory to the parking lot, including makeshift lighting and makeshift "crossing guards" at times during the power outage. But these measures were indisputably not in place at the time of the accident. Plaintiff's argument is not that he relied on measures that he thought were in place, but in fact weren't; his argument is that Ardagh promised to make crossing "as safe as possible," and it didn't. The temporary measures certainly show that Ardagh cared about its employees' well-being. The absence of such measures at the time Plaintiff was injured may bolster his argument that the promise was not kept, but one cannot rely on something that is not there.

¶6 In Chisolm v. Stephens, 365 N.E.2d 80 (Ill.App. 1977), a tenant sued her landlords for negligence, after she slipped and fell on ice and snow that had accumulated on a sidewalk within the premises. Tenant claimed, inter alia, that the landlords' years-long practice of clearing such winter accumulation from the sidewalk gave rise to a duty to keep doing so, and that their omission to do so, on the day of her injury, rendered them liable. The appellate court affirmed the trial court's order granting summary judgment to the landlords. In doing so, the court discussed at length the concept of gratuitous undertaking, and the difference between undertakings that permanently alter conditions for the worse, versus undertakings that are discrete and temporary:

[E]ven a person who has gratuitously assumed to protect others against injury is under no obligation to continue that protection indefinitely. ... The instant case involves non-feasance, a complete omission or failure to perform, rather than misfeasance, a negligent performance. Here the issue is not defendants' manner of performance in clearing the ice from the sidewalk but whether they had any duty to perform the clearing on the day of the incident. A question of legal duty rather than a question of due care.

Id. at 85-86.

Reliance may reasonably be placed where there is a deceptive appearance that performance had been made, or where a representation of performance has been communicated to plaintiff by defendant, or where plaintiff is otherwise prevented from obtaining knowledge or substitute performance of the undertaking. But, to justify reliance, plaintiff must be unaware of the actual circumstances and not equally capable of determining such facts.

Id. at 86. In other words (consistent with Section 323 of the Restatement, discussed in Chisolm), if the undertaking was temporary -- such that it did not alter the conditions knowable by the plaintiff -- then the issue is one of law (legal duty), not one of fact (reliance).

In the instant case, there was no undertaking by defendants on the morning of [the injury] to clear the sidewalk of ice nor to apply salt. ... Defendants did not entrap plaintiff by concealing facts which ordinary inspections would not reveal. Defendants did nothing to aggravate or make the ice condition more dangerous. Neither did they misrepresent that any action had been taken by them or misrepresent the condition of the sidewalk on the morning in question. Defendants did nothing to prevent plaintiff from obtaining information as to the conditions or from taking precautionary steps on her own behalf. ... Plaintiff's reliance under these circumstances could not be justified and would be unreasonable. Similarly, any reliance by plaintiff on the prior performances by defendants of ice and snow removal in the past is unjustified and unreasonable. Each prior snow and ice fall was an individual and temporary condition, unrelated to the present condition. The requisite reliance is not present in the instant case. No legal duty arose from the facts that defendants theretofore cleared the sidewalk of snow and ice, and defendants are not negligent as a matter of law. ...

Id. at 87 (emphasis added).

¶7 The implication in the present case seems to be that all of Ardagh's measures to make the crossing safer during the outage gave Plaintiff a false sense of security. But if these measures were not in place when Plaintiff crossed the street, how could he have relied on them, justifiably or otherwise? Plaintiff does not claim that, at the time of the injury, he believed some safety measures were in place that he could not see. Nor does he claim that the temporary measures somehow made the crosswalk more dangerous than the City had left it. At the moment he decided to cross the street, Plaintiff knew the lay of the land. The facts he has alleged cannot support liability under the gratuitous-undertaking theory. Holding Ardagh liable for not making the crossing "as safe as possible" (whatever that means) would transform it into an insurer or guarantor of employee safety, and hints at strict liability.

¶8 The fact that Plaintiff was seriously injured by a motorist is indeed unfortunate. But the Majority's decision will not make such situations any safer. They are likely to do the opposite, by discouraging employers (or anyone else) from assuming the role of the Good Samaritan.

¶9 Accordingly, I dissent.

FOOTNOTES

See also Lay v. Dworman, 1986 OK 85732 P.2d 455

Chadwell v. Clements, 847 P.2d 1344, 1349-50 (1993), the Kansas Court of Appeals affirmed the grant of summary judgment to an employer, sued by an employee for injuries sustained while crossing a public street that separated the plant from the employees' parking lot. Employee claimed, inter alia, that his employer gratuitously assumed a duty to provide safe passage by (among other things) occasionally deploying a security guard to help employees cross in the past. The appellate court noted that the employee could not have relied on the crossing guard, because none was present at the time he was injured, and that the employer's past measures had not rendered the crossing more dangerous than it already was.